**William Miles ANTHONY, an individual, William Miles Anthony Administrator of the Estate of Rena K. Anthony, and Jason Wendall Anthony and Jenesa Erin Anthony, Minors, by William Miles Anthony their Father and Next Friend, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 83–665–A.**

United States District Court, S.D. Iowa, C.D.

May 17, 1985.

Arvid D. Oliver, Des Moines, Iowa, for plaintiffs.

Richard C. Turner, U.S. Dist. Atty., Robert C. Dopf, Asst. U.S. Atty., Des Moines, Iowa, for defendant.

## RULING AND ORDER

STUART, District Judge.

Defendant, the United States of America, filed a motion for summary judgment on January 25, 1985. Plaintiff resisted the motion on February 13, 1985. The parties presented their oral arguments on defendant's motion for summary judgment on April 8, 1985. Appearances are noted in the clerk's minutes for that date. The Court finds the motion fully submitted and ready for ruling.

The parties are agreed as to the material facts. John McConnell was admitted as a voluntary patient to the Veterans Administration Medical Center in Knoxville, Iowa several times between 1980 and March 1982 for treatment of alcoholism. While at the Medical Center, McConnell was diagnosed as having Korsokoff's Syndrome secondary to alcoholism. During his admissions to the Medical Center, McConnell developed a habit of leaving the center when he received his pension check, spending the proceeds of his check on an alcoholic binge, and returning to the center when his funds were exhausted. Although he had lost his driver's license years before, McConnell often drove a car while on his drunken binges.

The officials at the Medical Center knew that McConnell had this inclination. Medical records disclose that certain officials at the Medical Center felt that McConnell was dangerous to himself and others because of his habit of driving while intoxicated. The officials attempted to keep McConnell from driving by confiscating his car keys. McConnell overcame this by having his car towed and the car locks changed. Subsequently, McConnell's car was locked in a fenced enclosure and its distributor wires were removed.

In January 1982, certain officials at the Medical Center decided to attempt to have McConnell involuntarily admitted so as to make him incompetent to handle his funds and bar him from leaving for his drunken binges. A commitment hearing was held on February 8, 1982. Objection was made to the notice provided McConnell. The presiding judge sustained the objection, ordered that process issue properly, and continued the commitment hearing until February 16, 1982. After reviewing its grounds for seeking involuntary commitment, the Veterans Administration determined that it could not prove sufficient grounds for McConnell's involuntary commitment. Thus, the V.A. abandoned the commitment proceeding.

On March 1, 1982, McConnell was still a voluntarily admitted patient at the Medical Center. McConnell was granted privileges to leave the Medical Center grounds on that date. At approximately 5:15 p.m. on that date, a car driven by McConnell crossed the center line on Iowa Highway 5 in Warren County, Iowa, and collided with plaintiff's car, causing plaintiff serious injuries and the death of plaintiff's wife.

Plaintiff sued defendant for recovery of damages on behalf of himself, his children, and his deceased wife's estate, alleging

that defendant negligently failed to control the conduct of McConnell so as to keep McConnell from causing the March 1 accident. Plaintiff's claims are made under 28 U.S.C. 1346(b), which provides for jurisdiction if plaintiff's claims allege facts that would make defendant, if it were a private entity, liable to plaintiff under the applicable state law. The law of the State of Iowa applies here.

Defendant contends that Iowa law does not create a duty in hospitals to confine or control known chronic alcoholics who are known to drive while intoxicated, and that, if such a duty were deemed to exist, it would extend only to readily identifiable persons.

Plaintiff bases his theory for recovery on *Tarasoff v. Regents of the University of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976) (en banc). In *Tarasoff*, Tatiana Tarasoff was killed by a young man who had told a university psychologist that he intended to kill Tatiana two months before the killing. The psychologist reported the threat to the campus police, who briefly detained the patient. However, the patient was released when he appeared to be rational and he promised to stay away from Tatiana. The psychologist's superior then directed him not to take any further action to confine the patient. No one warned the victim or her parents. Under these facts, the *Tarasoff* court stated:

> [D]efendant therapists cannot escape liability merely because Tatiana herself was not their patient. When a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger. The discharge of this duty may require the therapist to take one or more of various steps, depending upon the nature of the case. Thus it may call for him to warn the intended victim of the danger, to notify the police, or to take whatever other steps are reasonably necessary under the circumstances.

*Id.* 551 P.2d at 340. The *Tarasoff* Court relied on Restatement (Second) of Torts § 315 in holding that the relationship between a patient and his doctor or psychotherapist "may support affirmative duties for the benefit of third persons. Thus, for example, a hospital must exercise reasonable care to control the behavior of a patient which may endanger other persons." *Id.* at 343.

The California Supreme Court limited the scope of *Tarasoff* in *Thompson v. County of Alameda*, 614 P.2d 728 (1980) (en banc). In *Thompson*, a juvenile offender indicated that, if released, he would take the life of an unspecified young child in the neighborhood. Shortly after being released by defendant, the juvenile killed a young boy. The *Thompson* Court ruled that defendant did not owe a duty to warn the neighborhood parents. The Court distinguished *Tarasoff* on the ground that the decedent therein "was the known and specifically foreseeable and identifiable victim of the patient's threats." *Id.* at 734. Accordingly, the Court determined that "the duty to warn depends upon and arises from the existence of a prior threat to a specific identifiable victim." *Id.* at 738.

Plaintiff acknowledges that the Iowa Supreme Court has not adopted the rule of *Tarasoff* and its progeny, *In re Estate of Votteler*, 327 N.W.2d 759, 760 (Iowa 1982), and that he asks for an extension of that rule to the facts herein. In support of his contention that the *Tarasoff* rule should be extended to establish a basis for liability, plaintiff cites *Freese v. Lemmon*, 210 N.W.2d 576 (Iowa 1973).

In *Freese*, a patient who had previously suffered a seizure consulted a doctor for diagnosis. The doctor misdiagnosed the cause of the seizure and advised the plaintiff that he could drive an automobile. Subsequently the patient suffered another seizure while driving and struck plaintiff with his car causing plaintiff serious injuries. The plaintiff sued the doctor alleging that he was negligent in failing to properly diagnose the cause of the patient's first

seizure and in advising the patient that he could drive.

The plurality opinion in *Freese* was based on Restatement (Second) of Torts § 311(1)(b), which conditions liability on a person negligently giving false information to another person that results in physical harm caused by action taken in reasonable reliance on the information, where such harm results to third persons who are reasonably foreseeable to the speaker. The *Freese* plurality accepted, in the context of a motion to dismiss, that it must accept as true that the doctor had negligently advised the patient that he could drive, and that in the exercise of due care the doctor should have expected that members of the public, such as plaintiff, would be put in peril by the misdiagnosis and advice. Accordingly, the plurality determined that plaintiff's complaint could not be dismissed for failure to state a claim.

The Court finds that *Freese* is distinguishable from this case for two reasons. In *Freese*, the doctor affirmatively acted in providing the patient information that caused him to drive, causing the accident. Here, the Medical Center officials did everything short of forcibly confining McConnell to keep him from driving an automobile. More importantly, the result in *Freese* is to provide more incentive to doctors (and others providing information) to take care to provide accurate information based on an appropriate analysis. As explained more fully below, the "duty to control" proposed by plaintiff would require all health care providers caring for alcoholics to confine all alcoholics voluntarily seeking treatment and known to have the urge to drive while intoxicated. The Court finds that *Freese* does not offer support for such an expansive (and probably unconstitutional) duty.

The duty that plaintiff seeks to have the Court enforce would have a far-reaching affect on all health care providers. The Court can see no principled limit to the proposed "duty to control." Without commitment of the chronic alcoholic with the known tendencies to drive while intoxicat-ed, the health care provider would be ultimately responsible for the conduct of such patients. Thus, the duty to control would give incentive to all health care providers caring for alcoholics to either refuse to treat voluntary patients or to seek involuntary commitment as a means to limit liability. At the same time, alcoholics would be more opposed to seeking treatment for their condition if they knew they faced confinement as a condition of treatment. Public policy is directed toward treatment for alcoholism and encourages, rather than discourages, voluntary participation. The Court will not create such a far-reaching duty to control without a clear indication that Iowa law provides for it.

The majority of courts that have addressed the issue at bar have determined that *Tarasoff*-type liability should not extend to create a duty to protect unspecified, unidentified persons. *Brady v. Hopper*, 570 F.Supp. 1333, 1339 (D.Colo.1983); *Leedy v. Harnett*, 510 F.Supp. 1125, 1130–31 (M.D.Pa.1981); *Thompson, supra,* at 738. The "threats to specific victims" rule is based on a duty to warn and limits what would otherwise be unlimited and strict liability for health care providers who care for and counsel known dangerous persons. *Brady, supra,* at 1139; *Leedy, supra,* at 1130. The Court finds the rationale of those courts persuasive.

Finally, the Court rejects plaintiff's proposed duty to control. Plaintiff's specification of negligence is bottomed on defendant's failure to confine McConnell. Defendant had no duty or authority to confine McConnell against his will without a valid civil commitment order.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment shall be and hereby is granted.