(Nos. 62700, 62701, 62702, 62703, 62704 cons.)

JAMES D. KIRK, Appellee, v. MICHAEL REESE HOSPITAL AND MEDICAL CENTER *et al.*, Appellants.

*Opinion filed July 13, 1987.—Modified on denial of rehearing October 5, 1987.*

508

CLARK, C.J., and GOLDENHERSH, J., took no part.
SIMON, J., concurring in part and dissenting in part.

Lord, Bissell & Brook, of Chicago (Harold L. Jacobson and Hugh C. Griffin, of counsel), for appellant Michael Reese Hospital and Medical Center.

Sweeney & Riman, Ltd., of Chicago (Mary Jo Connelly and Georgene M. Wilson, of counsel), for appellant Irving H. Tracer.

Ann W. Regan and Kathleen E. Kiernan, of Wildman, Harrold, Allen & Dixon, of Chicago, for appellant Henry K. Fine.

Burditt, Bowles & Radzius, Ltd., of Chicago (Robert G. Epsteen and Richard E. Favoriti, of counsel), for appellant E. R. Squibb & Sons, Inc.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas R. Nelson, John T. Rank and Donald J. Hayden, of counsel), for appellant SmithKline Beckman Corporation.

Horwitz, Horwitz & Associates, Ltd., of Chicago (Andrew J. Horwitz, Mitchell Horwitz, Clifford W. Horwitz and Marc A. Perper, of counsel), and Dario A. Garibaldi, of Flossmoor, for appellee.

Cassidy & Mueller, of Peoria (David B. Mueller and Timothy J. Cassidy, of counsel), for *amicus curiae* Illinois Association of Defense Trial Counsel.

Kay E. Pinkus and Daniel J. Mulvanny, of Naperville, for *amicus curiae* Illinois Hospital Association.

D. Kendall Griffith, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for *amicus curiae* Metropolitan Chicago Healthcare Council.

Geoffrey R. W. Smith, of Washington, D.C. (Bruce J. Brennan, of counsel), for *amicus curiae* Pharmaceutical Manufacturers Association.

Robert J. Glenn, David A. Novoselsky and Kathleen M. Krist, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE WARD delivered the opinion of the court:

The five causes consolidated in this appeal arise from one personal injury action. The plaintiff, James D. Kirk, filed a six-count complaint in the circuit court of Cook County against six defendants, five of whom are involved in this appeal. The defendants moved to dismiss

the plaintiff's third amended complaint for failure to state a cause of action; the trial court dismissed the action against five of the defendants. On the plaintiff's appeal from the dismissal, the appellate court reversed the dismissals of the five counts and remanded for further proceedings. The defendants filed petitions for leave to appeal in this court under our Rule 315(a) (103 Ill. 2d R. 315(a)); we allowed the petitions and consolidated the five appeals for review.

Because this appeal is before the court on the defendants' motion to dismiss, all well-pleaded facts will be regarded as true. (*Katz v. Belmont National Bank* (1986), 112 Ill. 2d 64, 67; *Mein v. Masonite Corp.* (1985), 109 Ill. 2d 1, 7.) The plaintiff was injured August 1, 1978, while a passenger in a car driven by Daniel McCarthy when the car struck a tree. McCarthy had been a psychiatric patient at Michael Reese Hospital and Medical Center (hereafter Michael Reese), where he was treated by Dr. Irving H. Tracer and Dr. Henry K. Fine. The plaintiff alleges that Dr. Tracer was rendering medical treatment to McCarthy in the capacity of an agent, servant, or employee of Dr. Fine. The plaintiff alleges that Dr. Tracer, Dr. Fine, or their agents ordered prescription drugs in treating McCarthy. The drug Thorazine, which is manufactured by the defendant SmithKline Beckman Corp. (hereafter SmithKline), had been prescribed and Mc-Carthy also had been given Prolixin Decanoate, which is manufactured by the defendant E.R. Squibb & Sons, Inc. (hereafter Squibb), on the day he was discharged from the hospital. McCarthy, following his discharge from Michael Reese, consumed an alcoholic drink. Later in the day, Kirk was a passenger in the car driven by McCarthy and was injured when the car left the roadway and struck a tree in Chicago Heights.

In count I of the plaintiff's third amended complaint, he seeks recovery from Michael Reese on the theory that

the hospital negligently failed to adequately warn Mc-Carthy that the prescribed drugs administered would diminish his physical and mental abilities. Counts II and III seek recovery from Drs. Tracer and Fine, respectively, on the theory that the physicians knew or should have known that the drugs would diminish McCarthy's mental abilities and that they negligently failed to warn McCarthy. Counts IV and V, both of which seek recovery against Michael Reese, as well as Squibb and SmithKline, respectively, are based on a strict liability theory and allege that the drugs were in an unreasonably dangerous condition because the manufacturers failed to adequately warn of the drugs' dangerous propensities, that is, that the drugs would diminish the physical and mental abilities of the user, McCarthy. Count VI seeks recovery from McCarthy for his alleged negligence in operating the car. The trial court, after memoranda were filed and numerous arguments were heard, granted the motions of the hospital, two doctors, and two drug companies to dismiss. The trial court also denied the plaintiff's oral motion to file a fourth amended complaint. Count VI against McCarthy was not dismissed and is not involved in this appeal.

The appellate court, with one justice dissenting, reversed and remanded the dismissed counts for trial. (136 Ill. App. 3d 945.) The appellate court, considering whether the defendants owed a duty to the plaintiff as but a single issue, held that the doctors, hospital, and drug manufacturers each had a duty to adequately warn McCarthy of the adverse effects of the drugs, which duty, the court stated, was implicitly extended to cover members of the public who may be injured as a proximate cause of the failure to adequately warn (136 Ill. App. 3d 945, 952). Too, the appellate court held the hospital was open to liability on a strict liability theory for failure to warn McCarthy of the effects of the prescribed

drugs. As stated, the five defendants filed petitions for leave to appeal; their petitions were initially denied, but upon reconsideration, they were allowed and consolidated for review. Briefs *amici curiae* have been filed by five organizations. The Illinois Trial Lawyers Association, as *amicus*, supports the plaintiff's arguments that the appellate court decision should be affirmed. Another *amicus*, the Pharmaceutical Manufacturers Association, supports the arguments of defendants SmithKline and Squibb. The Illinois Hospital Association and Metropolitan Chicago Healthcare Council, in a joint *amicus* brief, support Michael Reese's views and particularly argue against liability being imposed toward the hospital under strict liability principles. The Illinois Association of Defense Trial Counsel generally argues to reverse the appellate court's decision and specifically supports the drug manufacturers' views.

Because we are reviewing the dismissal of a complaint for failure to state a cause of action, we must determine the legal sufficiency of the complaint. (*Katz v. Belmont National Bank* (1986), 112 Ill. 2d 64, 67.) Pleadings are to be liberally construed with a view to doing justice between the parties (Ill. Rev. Stat. 1985, ch. 110, par. 2—603(c); *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 17), but that does not lessen the obligation of the plaintiff to set out facts necessary for recovery under the theory asserted in the complaint. (*Teter v. Clemens* (1986), 112 Ill. 2d 252, 256-57.) Section 402A of the Restatement (Second) of Torts (1965), which this court has previously followed (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612), would subject a seller or manufacturer of a product to liability if the product is sold "in a defective condition unreasonably dangerous" to an ultimate user or consumer who is injured by the product. It is recognized that a failure to warn of a product's dangerous propensities may serve as the basis for holding a manu-

facturer strictly liable in tort. (*Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 206; *Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 29; Restatement (Second) of Torts sec. 402A, comment *j* (1965).) A prescription drug may be deemed unreasonably dangerous because of the absence of an adequate warning accompanying the product as the product may be "unavoidably unsafe" without such warning. Restatement (Second) of Torts sec. 402A, comment *k* (1965); *Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 550-51.

The plaintiff asserts that, while the class of persons to whom the warning is required to be given may be very limited, the class of persons to whom the duty is owed includes the public generally. He contends also that the appellate court holding does not abolish or diminish the "learned intermediary" doctrine. The plaintiff, although he argued at the trial proceedings that the pharmaceutical companies owed a duty to warn the patients who use the drugs, now accepts Squibb's and SmithKline's position that adequate warnings are to be given to physicians only and not to the public generally. Our appellate court has previously adopted the learned intermediary doctrine (*Mahr v. G. D. Searle & Co.* (1979), 72 Ill. App. 3d 540 (applying Texas law); *Hatfield v. Sandoz-Wander, Inc.* (1984), 124 Ill. App. 3d 780 (applying Indiana law); *Eldridge v. Eli Lilly & Co.* (1985), 138 Ill. App. 3d 124), but this court had not directly considered the issue. The rule, as adopted in numerous jurisdictions, provides that manufacturers of prescription drugs have a duty to warn prescribing physicians of the drugs' known dangerous propensities, and the physicians, in turn, using their medical judgment, have a duty to convey the warnings to their patients. (*Hatfield v. Sandoz-Wander, Inc.* (1984), 124 Ill. App. 3d 780, 788; *Mahr v. G. D. Searle & Co.* (1979), 72 Ill. App. 3d 540,

561; *Hoffman v. Sterling Drug, Inc.* (3rd Cir. 1973), 485 F.2d 132, 142; *Crocker v. Winthrop Laboratories* (Tex. 1974), 514 S.W.2d 429; *Stone v. Smith, Kline & French Laboratories* (11th Cir. 1984), 731 F.2d 1575, 1579; *Stevens v. Parke, Davis & Co.* (1973), 9 Cal. 3d 51, 507 P.2d 653, 107 Cal. Rptr. 45; *Terhune v. A. H. Robins Co.* (1978), 90 Wash. 2d 9, 577 P.2d 975; see also W. Prosser & W. Keeton, The Law of Torts sec. 96, at 688 (5th ed. 1984).) The rationale for the doctrine was stated in a holding concerning Thorazine, one of the drugs involved here, in *Stone v. Smith, Kline & French Laboratories* (11th Cir. 1984), 731 F.2d 1575, 1579:

" 'We cannot quarrel with the general proposition that where *prescription* drugs are concerned, the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use. This special standard for prescription drugs is an understandable exception to the Restatement's general rule that one who markets goods must warn foreseeable ultimate users of dangers inherent in his products. See Restatement (Second) of Torts, Section 388 (1965). Prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. As a medical expert, the prescribing physician can take into account the propensities of the drug as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, and individualized medical judgment bottomed on a knowledge of both patient and palliative. Pharmaceutical companies then, who must warn ultimate purchasers of dangers inherent in patent drugs sold over the counter, in selling prescription drugs are required to warn only the prescribing physician, who acts as a "learned intermediary" between manufacturer and consumer.' " (Emphasis in original.) 731 F.2d 1575, 1579-80, quoting *Reyes v. Wyeth Laboratories* (5th Cir. 1974), 498 F.2d 1264, 1276, *cert.*

*denied* (1974), 419 U.S. 1096, 42 L. Ed. 2d 688, 95 S. Ct. 687.

The drug manufacturer generally communicates warnings relating to prescription drugs to the medical profession through package inserts, the Physician's Desk Reference, "Dear Doctor" letters, detailmen, and through other measures. (*Sterling Drug, Inc. v. Yarrow* (8th Cir. 1969), 408 F.2d 978; *Mahr v. G. D. Searle & Co.* (1979), 72 Ill. App. 3d 540, 562; *Parke-Davis & Co. v. Stromsodt* (8th Cir. 1969), 411 F.2d 1390.) The doctor, functioning as a learned intermediary between the prescription drug manufacturer and the patient, decides which available drug best fits the patient's needs and chooses which facts from the various warnings should be conveyed to the patient, and the extent of disclosure is a matter of medical judgment. (*Hatfield v. Sandoz-Wander, Inc.* (1984), 124 Ill. App. 3d 780, 788; *Eldridge v. Eli Lilly & Co.* (1985), 138 Ill. App. 3d 124, 127; *Jones v. Irvin* (S.D. Ill. 1985), 602 F. Supp. 399, 402.) As such, we believe the learned intermediary doctrine is applicable here and that there is no duty on the part of manufacturers of prescription drugs to directly warn patients. Certainly, if the manufacturer of a prescription drug has no duty to directly warn the user of the drug of possible adverse effects, it has no duty to warn a nonuser as Kirk.

The plaintiff also argues that the warnings given to the two doctors here were inadequate, thus making the prescription drugs "unreasonably dangerous." This contention, however, is premature and puts the cart before the horse. As we determined in *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 10, whether a product is unreasonably dangerous for its intended uses "is simply not a relevant consideration unless plaintiff is a person entitled to the protections afforded by the concepts of strict-tort-liability actions against manufacturers." It is recognized

that a legal duty is imposed under strict liability upon those in the original production chain of a product to the benefit of those individuals to whom injury from a defective product may reasonably be foreseen. (*Court v. Grzelinski* (1978), 72 Ill. 2d 141, 146.) Those individuals may include not only the ultimate users or consumers, but also may include persons outside the purchasing chain of the product (Restatement (Second) of Torts sec. 402A, comment *l* (1965); *Court v. Grzelinski* (1978), 72 Ill. 2d 141, 146 (holding that, to the extent a fireman is a person to whom injury from the product may reasonably be foreseen, he may recover under products liability, even though his injury occurred while fighting a fire in the course of his employment); *Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94, 96.) In *Winnett*, we said:

> "In our judgment the liability of a manufacturer properly encompasses only those individuals to whom injury from a defective product may reasonably be foreseen and only those situations where the product is being used for the purpose for which it was intended or for which it is reasonably foreseeable that it may be used. Any other approach to the problem results in making the manufacturer and those in the chain of product distribution virtual insurers of the product, a position rejected by this court in *Suvada*." 57 Ill. 2d 7, 11.

*Winnett* determined that whether a plaintiff is entitled to the protection afforded by the concepts of strict tort liability depends on whether the alleged conduct was reasonably foreseeable. "A foreseeability test, however, is not intended to bring within the scope of the defendant's liability every injury that might possibly occur." (57 Ill. 2d 7, 12; see also *Riordan v. International Armament Corp.* (1985), 132 Ill. App. 3d 642 (no duty on part of the handgun manufacturer to warn consumers of illegal handgun uses for the benefit of a shooting victim).) Questions of foreseeability are ordinarily for a jury to re-

solve, but where the facts alleged in a complaint on their face demonstrate that the plaintiff would never be entitled to recover, that complaint is properly dismissed. (*Winnett v. Winnett* (1974), 57 Ill. 2d 7, 13.) We believe the facts alleged in counts IV and V against Squibb and SmithKline demonstrate on their face that plaintiff would never be entitled to recover. As such, it cannot be said that Squibb and SmithKline should have reasonably foreseen that their drugs would be dispensed without warnings by the physicians, that the patient would be discharged from the hospital, drink alcohol, drive a car, lose control of his car, hit a tree, and injure the passenger, Kirk, on the same day. This sequence would be triggered by an element that we have determined that the pharmaceutical companies did not have to foresee under the circumstances shown here: that the drugs would be dispensed without the warnings that the two companies provided to the physicians. As this court has noted, "[s]trict liability is not the equivalent of absolute liability. There are restrictions imposed upon it." (*Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 37; see also *Coney v. J. L. G. Industries, Inc.* (1983), 97 Ill. 2d 104, 111.) The trial court properly dismissed the two strict liability counts against Squibb and SmithKline.

The pharmaceutical companies say that the trial court properly denied the plaintiff's oral request to file a fourth amended complaint. The plaintiff asks that we grant leave to amend under Rule 362 (87 Ill. 2d R. 362(f)). A trial court has broad discretion in determining whether to allow amendments to a complaint. (*Deasey v. City of Chicago* (1952), 412 Ill. 151, 156-57; *Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 390.) The plaintiff's proposed amended complaint does not appear in the record; the plaintiff's failure to make it a part of the record waives his right to have this court review the trial court's denial of his motion. *Teter v. Clemens*

(1986), 112 Ill. 2d 252, 260-61; *Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill. 2d 1, 8.

Turning to the portions of the complaint charging Michael Reese, the plaintiff posits liability in counts I, IV, and V against the hospital on two theories: strict liability and negligence. Under the strict liability counts, the plaintiff alleges that the products—the prescription drugs—were made unreasonably dangerous through the hospital's alleged failure to warn the patient, McCarthy, of their possible adverse effects. The plaintiff correctly states that strict tort liability may be imposed upon sellers and those in the chain of distribution, as well as manufacturers, for their role in placing a defective product into the stream of commerce. (*Crowe v. Public Building Com.* (1978), 74 Ill. 2d 10, 13; *Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443.) The plaintiff bases his strict liability count against the hospital on the hospital's role in the chain of distribution, "standing between the manufacturer and the doctor," and also as the supplier of the prescription drug to McCarthy. For the reasons discussed concerning the pharmaceutical companies, we believe there is no duty here to this nonpatient, nonuser of the product, and, as such, Kirk is not a plaintiff entitled to protection under strict liability principles. Too, in *Dubin v. Michael Reese Hospital & Medical Center* (1980), 83 Ill. 2d 277, and *Greenberg v. Michael Reese Hospital* (1980), 83 Ill. 2d 282, this court held that a hospital cannot be held strictly liable for its employees' decision to administer X-ray treatments for tonsillitis because such an allegation is directed at the conduct of the health care professional rather than the nature of the particular product. An action directed at the appropriateness of X-radiation treatment is already afforded a sufficient remedy in the law of negligence. (83 Ill. 2d 282, 290.) As we discussed earlier, the learned intermediary doctrine requires that

the pharmaceutical company *warn the physician* of the known adverse effects of a particular prescription drug. The doctor, exercising his medical judgment, decides if drug therapy is an appropriate treatment for a psychiatric patient and decides which drugs will best suit his patient's needs. As was stated in *Stone v. Smith, Kline & French Laboratories* (11th Cir. 1984), 731 F.2d 1575, 1579, "This special standard for prescription drugs is an understandable exception to the Restatement's general rule that one who markets goods must warn foreseeable ultimate users of dangers inherent in his products." We must also recognize that "[t]he marketing situation as regards prescription drugs and vaccines is a unique one. *** The producer's basic responsibility in this area is to provide adequate warnings to physicians. It is the physician who is in the best position to decide when to use and how and when to inform his patient regarding risks and benefits pertaining to drug therapy." (W. Prosser & W. Keeton, The Law of Torts sec. 96, at 688 (5th ed. 1984).) As such, the manufacturer is only obligated to adequately warn the physicians, who decide which drug to use and which warnings to provide. The drug companies are not required to warn hospital personnel because they do not select the proper drugs for the patient and prescribe them. Although the holding of *Greenberg* is not directly applicable here, we believe its rationale is:

> "In cases involving goods and other tangible physical materials which are in some way bad, imposition of liability unquestionably enhances the public interest in human life and health. However, in cases which deal with the conduct of individuals or institutions which themselves are pledged to protect human life and health, precautions must be taken to avoid an ultimate diminution of protection. *** For the reasons stated we conclude that public policy dictates against the imposition of strict liability in tort for injuries resulting from the administration of X-

radiation treatments by a hospital." *Greenberg v. Michael Reese Hospital* (1980), 83 Ill. 2d 282, 290-91.

We believe the trial court properly dismissed this strict liability count against the hospital.

As for the negligence count against the hospital, the plaintiff's complaint alleges that Michael Reese had a duty, in prescribing the two drugs, to adequately warn McCarthy of adverse effects the drugs may have on his ability to safely operate an automobile. The hospital contends that it had no duty to warn McCarthy of the adverse effects of the drug because such a warning is a medical question within the discretion of the treating physician, who, the hospital says, bears this responsibility. The hospital also argues that its duties should not be extended to unknown, nonpatient, third parties.

Kirk makes no allegations that Drs. Fine or Tracer, the defendant physicians, were agents or employees of Michael Reese, which would postulate liability on a *respondeat superior* basis. Absent a principal-agent relationship, the alleged misconduct of a physician may not be imputed to the hospital, unless it had reason to know that malpractice would occur. (*Pickle v. Curns* (1982), 106 Ill. App. 3d 734, 738-39.) Nor does the complaint allege that the hospital, through one of its agents or employees, was negligent in administering the drugs prescribed to McCarthy by, for example, providing the wrong quantity or type of drug. (*Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, 420.) The extent of warnings to patients concerning prescription drugs, as we have previously noted, is within the discretion of the physician. As such, the alleged negligent acts specified in the complaint are matters within the duty of care owed by the treating physician, rather than the hospital.

Recognizing the physician's duty, the plaintiff also argues that the hospital has an independent duty to warn,

which is "based on ordinary principles of professional malpractice," and that that duty is extended to third parties. With this contention, then, the plaintiff is arguing that a third party with no patient/hospital or patient/physician relationship be allowed to bring a cause of action based on the alleged negligent treatment of another.

A complaint for negligence, to be legally sufficient, must set out facts that establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. (*Teter v. Clemens* (1986), 112 Ill. 2d 252, 256; *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 162.) The determination of whether a duty exists—whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff—is an issue of law to be determined by the court. *Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435, 440; *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 18-19; *Cunis v. Brennan* (1974), 56 Ill. 2d 372.

This court has held that "the existence of a legal duty is not to be bottomed on the factor of foreseeability alone," but on whether the harm reasonably was foreseeable. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375 (the defendant municipality owed no duty to the plaintiff, who was injured when he was thrown 30 feet upon the collision with a third person's automobile and impaled his leg on a drain pipe left in the defendant's public parkway); see also *Feldscher v. E&B, Inc.* (1983), 95 Ill. 2d 360, 368-69; *Palsgraf v. Long Island R.R. Co.* (1928), 248 N.Y. 339, 342-43, 162 N.E. 99, 100; 3 F. Harper, F. James & O. Gray, The Law of Torts sec. 18.2, at 664 (2d ed. 1986).) This standard of reasonable foreseeability governs the foreseeability of injury from the

defendant's conduct to the plaintiff, who would be the passenger here in the patient's car.

Although the reasonable foreseeability of injury is a key concern in determining whether a duty exists, it is not the only consideration. The question of duty in a negligence action should take into account the likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant. (*Lance v. Senior* (1967), 36 Ill. 2d 516, 518; *Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 99; see also *Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 388-89; *Resag v. Washington National Insurance Co.* (1980), 90 Ill. App. 3d 971, 974; *Van Skike v. Zussman* (1974), 22 Ill. App. 3d 1039, 1042.) As we said in our discussion of the strict liability counts, and based on the plaintiff's claimed defects in the warnings, this injury may not be considered reasonably foreseeable. This is particularly true where there is no allegation that the hospital's employees either knew or had reason to know that the warnings were not given by the prescribing physician. The burden of guarding against the type of injury that occurred to this plaintiff would be very cumbersome for the hospital employees, who do not receive the prescription drug warnings from the pharmaceutical companies, as do the physicians. In analogous circumstances, negligence claims against pharmacists for failure to warn concerning overconsumption of drugs have been dismissed primarily because the manufacturers' warnings about prescription drugs are to be given to the physicians, who then had the duty to warn the patients. See *Eldridge v. Eli Lilly & Co.* (1985), 138 Ill. App. 3d 124; *Jones v. Irvin* (S.D. Ill. 1985), 602 F. Supp. 399.

Holding the hospital liable for all harmful acts committed by patients who have been released would be an unreasonable burden on the institution. Too, a court's de-

termination of duty reflects the policy and social requirements of the time and community. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 544-45; Green, *Foreseeability In Negligence Law*, 61 Colum. L. Rev. 1401, 1423 (1961); Prosser, *Palsgraf Revisited*, 52 Mich. L. Rev. 1, 15 (1953).) It has been recognized that " 'duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." (W. Prosser & W. Keeton, The Law of Torts sec. 53, at 358 (5th ed. 1984).) Our State's public policy concerning malpractice actions and health care professionals was recently discussed in *Bernier v. Burris* (1986), 113 Ill. 2d 219. This court observed that the legislature's goal in enacting a comprehensive medical malpractice law, in which one provision prohibited punitive damages in actions for "healing art malpractice" or medical malpractice, was to reduce damages generally against the medical profession. (113 Ill. 2d 219, 246.) In upholding the provision that limited attorney fees in successful medical malpractice actions, we observed that "[t]he goals of the legislation *** were to reduce the burden existing in the health professions as a result of the perceived [medical] malpractice crisis." (113 Ill. 2d 219, 252; see also *Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 428.) We believe that public policy and social requirements do not require that a duty be placed upon the hospital to warn the patient of the dangers of using the drug, prescribed by his physician, that would be extended to third-party nonpatients who have no patient-hospital relationship or a special relationship with a patient.

In determining that a duty existed, the appellate court relied partially on *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, a decision that the hospital contends does not support the expanded duty of care im-

posed by the appellate court. *Renslow*, it would appear, is the only medical malpractice action in which this court recognized that a nonpatient third party with no patient-hospital or patient-doctor relationship was allowed to maintain a cause of action against a hospital and doctor. In *Renslow*, a child not conceived at the time negligent acts were committed against its mother by a doctor and hospital employees was allowed to sue for that negligence directed against its mother. A wrong against one person may invade the protected rights of one who has a special relationship with the first party, as the law recognizes a limited area of transferred negligence. (*Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 357; see also *Hofmann v. Blackmon* (Fla. App. 1970), 241 So. 2d 752.) The transfer of duty is limited by a court's policy decision that the duty to act with reasonable care should be transferred to the third-party plaintiff. This duty, however, arises from a *special relationship* between either the defendant and the other party or the third-party plaintiff and the other party. The duty in *Renslow* was based primarily on the injury's being a direct result of alleged negligence to the infant's mother, which was found to have invaded the protected rights of the child, who was intimately related to the mother. Obviously, that type of relationship does not exist between McCarthy, the patient who allegedly received negligent care, and Kirk, the passenger in his car.

As we stated in *Teter v. Clemens* (1986), 112 Ill. 2d 252, 258, "[t]he basis for liability in a negligence action is not the mere fact of injury but that an injury has been caused by fault." The negligence count against the hospital failed to state a cause of action because it lacks the first essential element in a negligence claim: a recognized duty of care owed by the defendant to the particular plaintiff. The trial court properly dismissed this count.

Much of our discussion of the negligence count against the hospital is applicable to the counts against the two doctors. The plaintiff says the treating physicians had a duty to warn their patient, McCarthy, that the drugs could diminish his physical and mental abilities and that that duty runs in favor of those in the reasonably foreseeable field of danger, which included Kirk. The plaintiff also contends that it was reasonably foreseeable that a patient who is given a drug that diminishes his driving abilities will later have a car accident. Thus, the plaintiff argues, the circumstances of this case give rise to a common law duty to warn, running from the doctors to those in the general public who may reasonably be expected to come in contact with the patient on the day he is released. Dr. Tracer acknowledges that he had a duty to warn his patient about adverse effects that may result from taking a prescription drug. He argues, however, that physicians do not owe a general duty to unknown nonpatients who are injured by the physician's alleged negligent treatment of a patient. Dr. Tracer also asserts that the public policy of this State prohibits such a broad duty being imposed against treating physicians. Both doctors also say that the events alleged in the plaintiff's third amended complaint that resulted in Kirk's injury were not reasonably foreseeable. The third amended complaint specifically alleges that Dr. Tracer rendered medical treatment to McCarthy in the capacity of agent/servant or employee of Dr. Fine and is thus based on a *respondeat superior* theory. Dr. Fine argues that the trial court properly dismissed the plaintiff's claim based on *respondeat superior* for failure to state a cause of action and also because the complaint alleges a superseding, intervening cause of plaintiff's injuries, McCarthy's alleged negligent driving.

With the exception of *Renslow*, discussed previously with reference to the hospital, the plaintiff has not cited

any holding in which this court has extended a physician's duty of care beyond the patient. In *Renslow*, this court recognized that the defendant doctor's duty to the mother could be transferred to her child based on the "intimate relationship" between the two. (67 Ill. 2d 348, 357.) There is no patient-doctor relationship here between the two defendant doctors and Kirk, nor is there a special relationship present as in *Renslow* between the patient and the plaintiff.

Many of the decisions upon which the plaintiff relies (*Semler v. Psychiatric Institute* (4th Cir. 1976), 538 F.2d 121; *Lipari v. Sears, Roebuck & Co.* (D. Neb. 1980), 497 F. Supp. 185; *Grimm v. Arizona Board of Pardons & Paroles* (1977), 115 Ariz. 260, 564 P.2d 1227; *Missouri, Kansas & Texas Ry. Co. v. Wood* (1902), 95 Tex. 223, 66 S.W. 449; *Williams v. United States* (D.S.D. 1978), 450 F. Supp. 1040; *Leverett v. State* (1978), 61 Ohio App. 2d 35, 399 N.E.2d 106; *McIntosh v. Milano* (1979), 168 N.J. Super. 466, 403 A.2d 500) have imposed a duty on doctors and medical or penal institutions with *physical custody* of dangerous individuals to protect third parties by taking reasonable measures to control their charge's conduct. These decisions represent an exception to the general proposition that there is no duty to control conduct of a third person to prevent him from causing harm to another absent a special relationship between either the dangerous person or potential victim. (Restatement (Second) of Torts sec. 315 (1965); *Welke v. Kuzilla* (1985), 144 Mich. App. 245, 375 N.W.2d 403; *Davis v. Mangelsdorf* (Ariz. App. 1983), 138 Ariz. 207, 673 P.2d 951.) There are types of relationships that give rise to a duty to control a third party's conduct set out in sections 316 to 319 of the Restatement (Second) of Torts (1965), but none are applicable here. These decisions upon which the plaintiff relies are primarily concerned with a custodian's duty and frequently rely on section 319 of the Restate-

ment (Second) of Torts (1965), concerning the "duty of those in charge of person having dangerous propensities." There is no allegation here that the plaintiff was negligently released from the hospital, and there is no allegation that McCarthy had dangerous propensities of which the hospital and physicians were aware.

It is true, as the plaintiff points out, that several jurisdictions (*Welke v. Kuzilla* (1985), 144 Mich. App. 245, 375 N.W.2d 403; *Davis v. Mangelsdorf* (Ariz. App. 1983), 138 Ariz. 207, 673 P.2d 951; *Gooden v. Tips* (Tex. App. 1983), 651 S.W.2d 364; *Wharton Transport Corp. v. Bridges* (Tenn. 1980), 606 S.W.2d 521; *Watkins v. United States* (5th Cir. 1979), 589 F.2d 214; *Freese v. Lemmon* (Iowa 1973), 210 N.W.2d 576; *Kaiser v. Suburban Transportation System* (1965), 65 Wash. 2d 461, 398 P.2d 14, *modified* (1965), 401 P.2d 350) have held that a physician's relationship with the patient was sufficient to impose a duty to protect unidentifiable, unknown third parties who are endangered by a patient. Other jurisdictions have limited the scope of the physician's duty to warn to situations in which there is, apart from the patient, a specifically identifiable potential victim, rather than holding that a duty exists to the public generally. (See, *e.g., Furr v. Spring Grove State Hospital* (1983), 53 Md. App. 474, 454 A.2d 414; *Cairl v. State* (Minn. 1982), 323 N.W.2d 20; *Anthony v. United States* (S.D. Iowa 1985), 616 F. Supp. 156.) We consider that the preferable view, and the one consistent with this court's holdings and with legislation based on social and public policy, is that a plaintiff cannot maintain a medical malpractice action absent a direct physician-patient relationship between the doctor and plaintiff or a special relationship, as present in *Renslow*, between the patient and the plaintiff. See also *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 21 (a third-party nonclient who brings a negligence action against an attorney must prove that the

primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party).

Dr. Tracer points out that the most effective way to fulfill the duty required by the appellate court's decision is through continued confinement of the patient, which he says would thwart drug therapy that enables psychiatric patients to return to the community to lead normal, productive lives. The plaintiff contends, however, that Dr. Tracer has falsely portrayed the burden of the physician's duty under the appellate court's decision. All that is necessary for a physician to extinguish his potential liability, in the plaintiff's view, is for the physician to tell the patient that the drug will diminish his physical and mental abilities, that he should not drive for a designated time period, and that he should not consume alcohol. The plaintiff overlooks that the appellate court decision explicitly extends the duties of the doctors—and, for that matter, all the defendants—beyond the patient to the general public. Such a broad duty extended to the general public would expand the physician's duty of care to an indeterminate class of potential plaintiffs. Our General Assembly, as we discussed previously, has very recently enacted major medical malpractice legislation to reduce the burden of litigation against health care professionals. We must conclude that the plaintiff here does not fall into the class of persons to whom the duty of care is owed by the defendant doctors. (See *Curtis v. County of Cook* (1983), 98 Ill. 2d 158.) The trial court properly dismissed the action against Dr. Tracer because no special relationship existed between the doctor and the plaintiff, or between the patient and the plaintiff, as in *Renslow*. The trial court had granted Dr. Fine's motion for judgment on the pleadings, based on the ground that a wholly derivative action could not stand against a principal where there is no cause of action against the

agent. When suit is brought against a master based on the alleged negligent acts of his servant, and no independent negligent acts are alleged against the master, the master's liability is entirely derivative. (*Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113.) Where the agent is not guilty, it necessarily follows that the party for whom he acted, the master, cannot be guilty. Because the action against Dr. Fine is a derivative action, based on Dr. Tracer's treatment of McCarthy as Dr. Fine's agent, it was also properly dismissed.

Other contentions of the plaintiff need not be considered because the first essential of a negligence action— the existence of a recognized duty—has not been met.

For the reasons stated, the judgment of the appellate court is reversed as to all counts and the judgment of the trial court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

CHIEF JUSTICE CLARK and JUSTICE GOLDEN-HERSH took no part in the consideration or decision of this case.

JUSTICE SIMON, concurring in part and dissenting in part:

While I concur with the majority's decision to dismiss the claim against the hospital, I dissent from the majority's conclusion that the plaintiff fails to state a cause of action against the doctors for negligence and against the pharmaceutical companies for failure to give adequate warnings of the drugs' dangerous propensities. The cause of action against the doctors presents neither the problems inherent in upholding the negligence count against the hospital nor the complex policy considerations involved in extending the boundaries of the tort of medical malpractice. (117 Ill. 2d at 529.) Rather, the doc-

tors' liability here is grounded in basic concepts of negligence, the same primary elements of negligence which law students study during their first year: duty, breach of duty, and the foreseeable injury that subsequently results. See, *e.g.*, F. Harper, F. James & O. Gray, The Law of Torts sec. 18.2 (2d ed. 1986).

The majority accurately states that: "The question of duty in a negligence action should take into account the likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant." (117 Ill. 2d at 526, citing *Lance v. Senior* (1967), 36 Ill. 2d 516, 518; *Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 99.) The doctors here have already acknowledged that they breached their duty to warn their patient of the possible adverse side effects of the prescribed drugs. Had they adequately warned their patient of the risks which the pharmaceutical company discussed in their insert, the patient would have been aware that:

"The use of this drug may impair the mental and physical abilities required for driving a car or operating heavy machinery. Physicians should be alert to the possibility that severe adverse reactions may occur which require immediate medical attention. Potentiation of the effects of alcohol may occur with the use of this drug."

The doctors' failure to issue this warning set into motion a series of events which culminated in an injury to a foreseeable class of persons—a passenger in the car of a patient who took the drug, drank, and drove.

It is immaterial that the passenger rather than the patient was injured as a result of the doctors' failure to issue these warnings. A duty can exist to a third party when a defendant who has knowledge of the risk fails to take precautions, and a foreseeable injury of the same kind or class of harm which made the conduct dangerous

occurs. *Neering v. Illinois Central Railroad Co.* (1943), 383 Ill. 366, 379.

For instance, it is negligent for an adult to give a loaded shotgun to a child because a child does not have the maturity to understand the potential danger of pulling the trigger. As far as the adult's liability is concerned, it makes little difference whether the child shoots himself or someone else whom the adult has no reason to know. The adult's duty to refrain from this negligent act extends to all "kinds of hazards that were so foreseeably great as to make the act negligent." F. Harper, F. James & O. Gray, The Law of Torts sec. 18.2, at 662 (2d ed. 1986).

As in the above example, the doctors here are responsible for the natural consequences that flow from their failure to issue proper warnings to their patient. These consequences would include the plaintiff's injury since it fell within the foreseeable risks specifically mentioned in the warnings provided by the pharmaceutical company. The majority's view that the plaintiff here was too remote to fall within the scope of the doctors' duty of care (117 Ill. 2d at 530) is overly narrow under any modern theory of negligence. The doctors were aware of the dangers of drinking while taking the prescribed medication. They were also aware that the drugs could impair the patient's ability to drive. Because it was foreseeable that if the patient were unaware of the side effects of the drugs he might have a drink and drive, it was also foreseeable that such conduct could harm a passenger in his car. Since the plaintiff's harm was a foreseeable consequence of the doctors' failure to guard against this risk, the plaintiff's injury fell within the scope of the doctors' duty of due care.

The majority's fear that if we were to uphold this cause of action we would extend a doctor's duty of care to an indeterminable number of persons is misplaced.

(117 Ill. 2d at 530) As stated above, the doctors' potential liability extends only to the class of persons whose injury is so foreseeably great as to make the doctors' conduct negligent. The majority's comparison of the facts presented here to the situation in the famous case of *Palsgraf v. Long Island R.R. Co.* (1928), 248 N.Y. 339, 162 N.E. 99, is, therefore, inappropriate. The injury there was far more remote from the negligent conduct than the injury here. In *Palsgraf* the plaintiff sued a railroad company for injuries sustained when she was hit by several scales which fell off the station wall. The scales fell due to an explosion which occurred when a railroad guard pushed a passenger, who was carrying a box of fire crackers, aboard a crowded train. The force of the explosion knocked the scales off the wall, hitting the plaintiff. Justice Cardozo, writing for the New York Court of Appeals, concluded that the railroad company was not liable for the accident. He reasoned that:

> "The conduct of the defendant's guard, *** was not a wrong in its relation to the plaintiff, standing far away. Relatively to her it was not negligence at all. Nothing in the situation gave notice that the falling package had in it the potency of peril to persons thus removed ***. If no hazard was apparent to the eye of ordinary vigilance, an act innocent and harmless, at least to outward seeming, with reference to her, did not take to itself the quality of a tort because it happened to be a wrong *** with reference to some one else [the passenger carrying the package of fire crackers] ***." F. Harper, F. James & O. Gray, The Law of Torts sec. 18.2, at 655 (2d ed. 1986), quoting *Palsgraf v. Long Island R.R. Co.* (1928), 248 N.Y. 399, 341-44, 162 N.E. 99, 99-100.

In contrast, the risk to the plaintiff here was readily apparent—it was foreseeable that the patient could injure himself while driving should he fail to receive the appropriate warnings. It was as forseeable that while driving he might have a passenger who also would be in-

jured because of the combination of the medicine and alcohol. Too, there was nothing seemingly innocent or harmless in the doctors' failure to issue the warning. The doctors' wrongs here were twofold; they not only failed to exercise due care to their patient by neglecting to issue the warnings, but also they disregarded the risk to the plaintiff or any other person unfortunate enough to be traveling with the patient or in his path. As one group of commentators have noted, the rule of *Palsgraf* is that:

> "[T]he scope of duty is concerned with exactly the same factors as is the inquiry into whether conduct is unreasonably dangerous (i.e., negligent). Both seek to find what consequences of the challenged conduct should have been foreseen by the actor who engaged in it. Neither inquiry stops with what might be called the physical range of foreseeable harm, or with mere proximity in time or space. In both we look to see what natural forces and what human conduct should have appeared likely to come on the scene, and we weigh the dangerous consequences likely to flow from the challenged conduct in the light of these interventions." F. Harper, F. James & O. Gray, The Law of Torts sec. 18.2, at 656-57 (2d ed. 1986).

The plaintiff's cause of action in this case fits squarely within this rule. The injury was a natural consequence of the doctors' failure to issue the warnings and, unlike the situation in *Palsgraf*, no extra burden is imposed on a doctor to take precautions or give adequate warnings because the plaintiff's passenger rather than the plaintiff might be injured. In contrast to the situation in *Palsgraf*, where to avoid liability a guard would have had to open every single package before helping a person onto a train, all a doctor would be required to do is what the law already expects—to exercise due care with respect to his patient by informing him of the side effects of the prescribed drugs.

The majority's decision to dismiss the strict liability claim for failure to provide adequate warnings is also questionable. The court's ruling effectively holds that the learned intermediary doctrine, which absolves a pharmaceutical manufacturer of liability for harmful side effects of the prescribed drug once health-care professionals are given adequate warnings, operates as an absolute defense to strict liability. My colleagues reach this conclusion without any consideration of the nature, adequacy or existence of the warnings the pharmaceutical company gave with respect to the medicine prescribed here.

The broad reach of this holding results from the majority's error in viewing this question as though it came before this court on a ruling on a motion for summary judgment, rather than a motion to dismiss. Instead of examining the legal sufficiency of the complaint, the appropriate standard for reviewing a dismissal resulting from failure to state a cause of action (*Katz v. Belmont National Bank* (1986), 112 Ill. 2d 64, 67), the majority, in effect, accepts as true the pharmaceutical companies' allegation that the warnings they provided were adequate. The majority states that the pharmaceutical companies would not:

> "have reasonably foreseen that their drugs would be dispensed without warnings by the physicians ***. This sequence would be triggered by an element that we have determined that the pharmaceutical companies did not have to foresee under the circumstance shown here: that the drugs would be dispensed *without the warnings that the two companies provided to the physicians.*" (Emphasis added.) 117 Ill. 2d at 521.

The majority, in assuming the warnings were adequate, deprives the plaintiff of his right to present evidence to a finder of fact relative to the existence and sufficiency of the warnings. Our appellate court, in re-

versing the trial court's dismissal of this claim, accurately emphasized that:

> "[T]he sufficiency of the warnings is not resolved judicially *** but remains a question to be resolved by the trier of fact ***. *** Here, since the counts against the drug manufacturers were dismissed because of a failure to state a cause of action [citation], the *factual question as to the adequacy of warnings that allegedly were included as package inserts or that may have been given by the drug manufacturers to the medical profession is not before us.* (Emphasis added.) 136 Ill. App. 3d 945, 952 n.2.

By denying the plaintiff his right to present this proof, the majority has turned the learned intermediary doctrine into an absolute bar against liability. This determination effectively insulates drug manufacturers from their obligation to provide adequate warnings. Although the warnings given may have been adequate, we have no way at this point in the litigation of knowing whether this is so, and my view is that their adequacy needs to be tried out.