NOTICE

Decision filed 05/17/07. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-06-0065

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| BRENDA TEDRICK, Administrator of the Estate of Teresa Street, Deceased, and BRENDA TEDRICK and JAMES TEDRICK, Guardians of the Estates of Dalton Ryan Street and Dylan Bryce Street, Minors, | ) Appeal from the<br>) Circuit Court of<br>) Marion County.<br>)<br>) |
|    Plaintiffs-Appellants, | )<br>) |
| v. | ) No. 05-L-36<br>) |
| COMMUNITY RESOURCE CENTER, INC., d/b/a COMMUNITY RESOURCE CENTER, VANDALIA, ILLINOIS; DEENA BALLARD, LCSW; LYNETTE M. GARTKE, LCPC; GEORGIANNE B. BROUGHTON, LCPC; JAMES R. GOGGIN, M.D.; HEALTH MANAGEMENT LIMITED PARTNERSHIP, d/b/a DOCTORS HOSPITAL; VINE STREET CLINIC, LLC; FAREED TABATABAI, M.D., JUDY L. KEEVEN, M.D.; and SALLY PUTNAM, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
|    Defendants-Appellees | )<br>) |
| (Physicians Group Associates, S.C., Daniel O'Brien, M.D., and St. Mary's Hospital, Centralia, Illinois, | )<br>)<br>) Honorable<br>) David L. Sauer, |
|    Respondents in Discovery-Appellees). | ) Judge, presiding. |

_____

JUSTICE DONOVAN delivered the opinion of the court:

The plaintiffs filed a wrongful-death-and-survival action in the circuit court of Marion County on behalf of the estates of Teresa Street, deceased, and her children against several health care providers alleging that they breached their duties to warn and to protect Teresa Street from foreseeable violent acts of her husband, Richard Street. The circuit court found

1

that the plaintiffs failed to allege a recognized duty of care owed by any named defendant to Teresa Street, and the court dismissed the action with prejudice. On appeal, the plaintiffs claim that the trial court erred in dismissing the action because the defendants owed duties to Teresa Street under voluntary-undertaking and transferred-negligence theories of liability. The plaintiffs also claimed that the trial court erred in denying them reimbursement for the time and expenses that they incurred in compelling a respondent in discovery to comply with the rules of discovery.

I. Factual and Procedural Background

On May 13, 2003, Richard Street was checked into Hillsboro Hospital. According to the patient history, Richard was having thoughts of killing himself and killing his wife, Teresa Street. An emergency screening assessment was conducted. The assessment revealed that Richard had been enduring paranoid delusions and "gustatory" hallucinations for the previous month or two. It also revealed that Richard had a history of depression and panic attacks and that he had attempted to stab himself two months prior to the admission.

Following the assessment, Richard Street was transferred to Doctors Hospital in Springfield for purposes of evaluation and treatment. Sally Putnam, a social worker employed by Doctors Hospital, obtained a psychiatric social history on Richard. She included information based on interviews with Richard Street, Teresa Street, and Richard's mother, Nileene Hancock. Teresa reported that her husband was losing "his grip on reality" and that he had been exhibiting strange behavior for about a month. Teresa also stated Richard thought that she was trying to drug him and their children, that she was having an affair, and that the guys at work were trying to kill him. Nileene Hancock reported that her son had expressed a plan to kill himself and Teresa. Richard acknowledged that he had suicidal thoughts and that he had recently placed a knife to his chest with thoughts of killing himself but changed his mind. Richard reported that he worried a lot about his wife cheating

2

on him. Richard believed that Teresa was trying to poison him and his sons. He admitted that he had a homicidal plan.

Richard Street was hospitalized at Doctors Hospital from May 13, 2003, to May 16, 2003. During the admission, Richard was evaluated and treated by Fareed Tabatabai, M.D., a psychiatrist with the Vine Street Clinic. Dr. Tabatabai discharged Richard Street from Doctors Hospital on May 16, 2003, with the diagnosis of "major depression with mild psychotic features". Richard was instructed to attend a follow-up appointment with the Community Resource Center (CRC) in Fayette County on May 20, 2003. CRC is an outpatient facility that treats individuals afflicted with depression or substance abuse issues. Lynette M. Gartke, a licensed clinical professional counselor (LCPC) at CRC, conducted an initial evaluation of Richard on May 20, 2003, and a comprehensive assessment on June 3, 2003.

On June 6, 2003, at approximately 10 a.m., Richard Street arrived at CRC in a state of crisis. Deena Ballard, a licensed clinical social worker, performed a crisis-intervention assessment. During the assessment, Richard indicated that he wanted to voluntarily admit himself to a mental health hospital. He reported that he was going to kill his wife, Teresa. Richard's mother was present. She reported that her son had threatened to kill Teresa. Deena Ballard contacted St. Mary's Hospital in Centralia to arrange for a voluntary admission. Richard was deemed appropriate for admission pending a formal determination by the hospital. Sometime between 11:30 a.m. and noon, during the process of arranging for the admission, Richard changed his mind. He indicated that he no longer wanted to be hospitalized. He wanted to return home to his wife. Deena Ballard scheduled Richard for an appointment later that day with his family physician, James R. Goggin, M.D. Richard left CRC accompanied by his mother and a nephew.

Meanwhile, Teresa Street was on her way to CRC. She arrived at the facility between

3

noon and 12:15 p.m., and she consulted with Deena Ballard. Teresa expressed her concern about Richard's changing moods and behavior and his treatment needs. Deena Ballard provided Teresa with a crisis line telephone number, and Teresa agreed to call the crisis line or the police in an emergency.

At about 3:45 p.m. on June 6, 2003, Richard Street arrived for his appointment with Dr. Goggin. Teresa Street and Nileene Hancock also attended the appointment. Dr. Goggin met with Richard and his mother. He met separately with Teresa. In his office record, Dr. Goggin noted Teresa's concern that Richard might hurt her because he believed she was having an affair. Dr. Goggin also noted that Richard had denied suicidal ideations at that time and that Richard had said that he did not intend to hurt Teresa. The record also indicates that Nileene Hancock agreed with her son's assessment of his mental state. Dr. Goggin noted that Richard displayed symptoms of paranoia. He prescribed Xanax and Zyprexa. Dr. Goggin advised Richard that he could not treat Richard for this condition. Dr. Goggin told Richard that he should have psychiatric care.

On June 9, 2003, Richard Street was found lying over the lifeless body of Teresa Street. Teresa, the 34-year-old mother of three, had been strangled. Richard Street was found to have overdosed on medication. He survived the episode but required below-the-knee amputation of both legs because of the way his body was positioned during the period following his ingestion of the medication. In December 2005, Richard Street entered a guilty plea to second-degree murder in the death of his wife, and he was sentenced to 18 years in prison.

The plaintiffs filed a wrongful-death action on behalf of the estates of Teresa Street and her children, against Richard Street's health care providers, alleging theories of direct negligence and transferred negligence. In the third amended complaint, the plaintiffs alleged that in the period between May 13, 2003, and June 9, 2003, Richard Street came under the

4

care of the defendants for psychiatric care, that Richard Street informed the defendants that he thought his wife was committing adultery and trying to poison him and their sons, that Richard Street told the defendants that he had thoughts of killing himself and his wife, that it was reasonably foreseeable that Richard Street would injure and/or kill Teresa Street, and that the defendants knew or should have known that Richard Street posed a specific threat of harm to Teresa Street.

In support of the voluntary-undertaking theory, the plaintiffs alleged that the defendants undertook to evaluate, supervise, treat, and control Richard Street for the protection of Teresa Street and that Teresa Street relied on the defendants to exercise reasonable care in the performance of their undertakings by conducting appropriate evaluation, treatment, supervision, and control of Richard Street and by warning Teresa Street of Richard Street's threats of violence against her. As to the theory of transferred negligence, the plaintiffs alleged that Teresa Street and Richard Street had the type of special and intimate relationship that gives rise to the transfer of the defendants' duties of care to Teresa Street. The complaint further asserts that the breach of one or more of the stated duties proximately caused pain and suffering, and ultimately the death of Teresa Street.

The defendants moved to dismiss the action under section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2002)), on the ground that the allegations failed to show that the defendants owed a duty of care to Teresa Street. The defendants claimed that the complaint lacked factual allegations indicating the existence of a direct physician-patient relationship between Teresa Street and the defendants, or a special relationship between Teresa Street and Richard Street.

The trial court dismissed the action with prejudice on the ground that the third amended complaint in its entirety failed to allege a recognized duty owed by any named defendant to the decedent. In its docket entry, the trial court wrote that the nature of the

5

special relationships that will establish transferred negligence has been narrowly defined in reported decisions in Illinois. The court found that the complaint did not allege the existence of a special relationship that has been recognized by existing Illinois law and that there was no other legal basis in Illinois law from which to find a duty owed by the medical care providers to a third party.

## II. Analysis of the Issues

A motion to dismiss brought pursuant to section 2-615 attacks the legal sufficiency of the complaint. *Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 348, 798 N.E.2d 724, 733 (2003). It is properly granted only when it clearly appears that no set of facts could ever be proved under the pleadings that would entitle the plaintiff to recover damages. *Chandler*, 207 Ill. 2d at 349, 798 N.E.2d at 733. On review of an order dismissing an action for a failure to state a cause of action, all well-pleaded facts and reasonable inferences therefrom are taken as true, and the allegations of the complaint are to be liberally construed with a view towards substantial justice between the parties. *Doe 1 v. North Central Behavioral Health Systems, Inc.*, 352 Ill. App. 3d 284, 286, 816 N.E.2d 4, 6 (2004). Whether the complaint states a valid cause of action is a question of law that is reviewed *de novo*. *Chandler*, 207 Ill. 2d at 349, 798 N.E.2d at 733.

To adequately state a cause of action for negligence, the plaintiff must allege facts that establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury that was proximately caused by the breach. *Pelham v. Griesheimer*, 92 Ill. 2d 13, 18, 440 N.E.2d 96, 98 (1982). The existence of a duty depends on whether a plaintiff and a defendant stood in such a relationship to each other that the law imposed on the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Pelham*, 92 Ill. 2d at 18-19, 440 N.E.2d at 98. The existence of a duty is a question of law to be resolved by the court. *Pelham*, 92 Ill. 2d at 19, 440 N.E.2d at 98.

6

The present action is predicated on the duties of the physicians and other health care providers to warn Teresa Street of the potential violent acts of Richard Street. In such an action, a plaintiff must establish the following elements relating to the alleged duty: (a) the patient made a specific threat of violence, (b) the threat was directed toward a specific and identifiable victim, and (c) there was a direct physician-patient relationship between the defendant and the plaintiff or a special relationship between the patient and the plaintiff. *Doe 1*, 352 Ill. App. 3d at 290, 816 N.E.2d at 9; *Reynolds v. National R.R. Passenger Corp.*, 216 Ill. App. 3d 334, 338, 576 N.E.2d 1041, 1043 (1991).

That the third amended complaint sets out sufficient factual allegations to indicate that Richard Street made specific threats of violence toward his wife within days of her murder is not seriously challenged. At issue is whether the complaint contains sufficient factual allegations to indicate that Teresa Street falls within the class of persons to whom a duty of care was owed by the health care providers who evaluated and treated Richard Street. The plaintiffs have alleged that the defendants owed a duty to warn and to protect Teresa Street against potential violent acts of her husband pursuant to sections 315 and 324A of the Restatement (Second) of Torts (Restatement (Second) of Torts §§315, 324A (1965)) and a duty to appropriately evaluate, treat, and supervise Richard Street for the care and benefit of Teresa Street under a transferred-negligence theory. We consider each in turn.

A. Special-Relationship Exceptions to Section 315 of the Restatement (Second) of Torts

Section 315 of the Restatement (Second) of Torts sets out the general rule that a person has no duty to control the conduct of a third person to prevent him from causing harm to another, in the absence of a special relationship between the actor and the third person or between the actor and the other. Restatement (Second) of Torts §315 (1965). The duties arising from special relationships include the duty of a parent to control the conduct of his minor child (Restatement (Second) of Torts §316 (1965)), the duty of a master to control his

7

servant (Restatement (Second) of Torts §317 (1965)), the duty of a possessor of land or chattels to control the conduct of a licensee (Restatement (Second) of Torts §318 (1965)), and the duty of those who have charge of a person with dangerous propensities (Restatement (Second) of Torts §319 (1965)).

Of the relationships identified in sections 316 through 319 of the Restatement (Second) of Torts, only the custodian-charge relationship could conceivably apply here. Section 319 provides that one who has charge of a person whom he knows or should know is likely to cause bodily harm to others if not controlled has a duty to exercise reasonable care to control the person in order to prevent him from doing that harm.

In construing the scope of the custodian-charge relationship for purposes of imposing a duty of care under section 319, mental health facilities and criminal justice agencies have been held to "have charge of" a person with dangerous propensities where the person was "committed" to the institution through a court order or an adjudication that gave the institution or its agent actual control over the person.  See *Estate of Johnson v. Condell Memorial Hospital*, 119 Ill. 2d 496, 509-10, 520 N.E.2d 37, 42-43 (1988) (the complaint failed to plead the hospital's duty of care under section 319 in the absence of any factual allegation that the patient was involuntarily admitted to the facility or was the subject of a petition for an emergency admission); *National Bank of Bloomington v. State*, 35 Ill. Ct. Cl. 37 (1982) (the estate of a decedent killed by a parolee established that a state parole officer breached a duty to adequately monitor and control the parolee where the Illinois Court of Claims deemed the parolee to be in the custody and under the control of the parole officer). These cases suggest that a duty under section 319 will not arise in the absence of allegations that the person with dangerous propensities was committed to the custody and control of an institution or its agent.  In this case, the third amended complaint lacks the factual allegations necessary to state a cause of action based on section 319 or any of the other special-

relationship exceptions to section 315 of the Restatement (Second) of Torts.

## B.  The Voluntary-Undertaking Duty

Illinois law recognizes that a duty may arise under the common law where a person voluntarily undertakes a duty of care.  See *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 199 N.E.2d 769 (1964).  In addition, the Illinois Supreme Court has implicitly adopted section 324A of the Restatement (Second) of Torts (Restatement (Second) of Torts §324A (1965)).  See *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 210-11, 399 N.E.2d 596, 600 (1979).  Section 324A states as follows:

> "§324A.  Liability to Third Person for Negligent Performance of Undertaking
>
> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things[] is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."  Restatement (Second) of Torts §324A (1965).

Pursuant to the voluntary-undertaking theory, one who gratuitously undertakes to render service to another is subject to liability for bodily harm caused to the other if he fails to exercise due care or to act with the competence and skill that he possesses while performing the undertaking.  *Nelson*, 31 Ill. 2d at 85-86, 199 N.E.2d at 779; *Siklas v. Ecker Center for Mental Health, Inc.*, 248 Ill. App. 3d 124, 131, 617 N.E.2d 507, 512 (1993).  However, the scope of the duty is limited to the extent of the undertaking.  *Siklas*, 248 Ill. App. 3d at 131, 617 N.E.2d at 512.

9

In *Siklas*, a patient brought a negligence action against the defendant, a mental health center, alleging that the defendant violated its duty to warn him of the dangerous propensities of his roommate and by failing to relocate him or his roommate. The defendant's breach of duty was premised on a number of theories, including the voluntary-undertaking theory. *Siklas*, 248 Ill. App. 3d at 131, 617 N.E.2d at 512. The Second District concluded that the defendant had undertaken to locate housing and a compatible roommate for the plaintiff, a young man with a history of mental illness, and to monitor the living arrangements, mental status, and compatibility of the plaintiff and the plaintiff's roommate, who also suffered from a mental illness. The court found that implicit in the defendant's undertakings was an obligation to determine, insofar as possible, that the plaintiff remained safe in his housing. *Siklas*, 248 Ill. App. 3d at 132, 617 N.E.2d at 513. While the *Siklas* appeal challenged the entry of a summary judgment, we find the discussion of the mental health center's duty to exercise reasonable care in performing services that it undertook for the protection of a third party to be helpful in our analysis here.

In this case, the plaintiffs have alleged that from May 13, 2003, Richard Street had ongoing paranoid delusions that his wife was having an affair and that she was trying to poison him and their children, that Richard Street acknowledged to the defendants that he had thoughts of killing his wife and that he had threatened to kill her, that the defendants knew or should have known of Richard's threats of violence, and that Richard Street's propensity to do violence to himself and to his wife was reasonably foreseeable to the defendants. The plaintiffs further alleged that the defendants undertook to evaluate, treat, and control Richard Street for his protection and the protection of his wife; that Teresa relied on the defendants' undertakings, assuming that they would appropriately evaluate and treat her husband's condition and that they would keep her safe from his violent propensities, passing on other remedies or protections against the risks; that the defendants' failure to

10

exercise reasonable care in the performance of their undertakings increased the risk of harm to Teresa; and that Teresa was harmed by the defendants' failure to exercise reasonable care in the performance of their undertakings. Accepting all well-pleaded factual allegations and the reasonable inferences derived therefrom as true, we conclude that the third amended complaint contains sufficient factual allegations regarding the defendants' assumption of a duty to warn Teresa Street about the violent propensities of her husband to survive a motion to dismiss brought pursuant to section 2-615 of the Code of Civil Procedure.

### C. Duty and the Concept of Transferred Negligence

The Illinois Supreme Court first recognized that a nonpatient, third party who was injured as a result of a negligent act performed against a patient could maintain an action against the medical providers in *Renslow v. Mennonite Hospital*, 67 Ill. 2d 348, 367 N.E.2d 1250 (1977). In *Renslow*, a 13-year-old patient with Rh-negative blood was given a transfusion of Rh-positive blood by the health care providers (the defendants). As a result of the defendants' negligence in transfusing incompatible blood, the patient's blood was sensitized to the Rh-positive factor. The defendants did not inform their patient of the medical error or its effects. The patient first learned that her blood had been sensitized eight years later, when she was pregnant. The infant suffered permanent damage to her brain, internal organs, and nervous system because her mother had been exposed to incompatible blood. The supreme court found that the negligence against the mother invaded the protected rights of her infant, with whom she shared an intimate relationship. *Renslow*, 67 Ill. 2d at 357-58, 367 N.E.2d at 1254-55. The court determined that the defendants' duty of care to the patient should be transferred to the patient's infant because of the special relationship between the infant and her mother and because the injury to the infant was alleged to be the direct result of negligent treatment rendered to the mother. *Renslow*, 67 Ill. 2d at 356-57, 367 N.E.2d at 1254-55. The Illinois Supreme Court recognized the concept of transferred

11

negligence but limited its reach to circumstances where there was a special, intimate relationship between the parties harmed. *Renslow*, 67 Ill. 2d at 357, 367 N.E.2d at 1255.

Ten years later, the supreme court reaffirmed its decision to limit the scope of transferred negligence to cases involving a special relationship, as present in *Renslow*, between the patient and the plaintiff. *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 531-32, 513 N.E.2d 387, 399 (1987). In *Kirk*, the plaintiff sought to recover damages for injuries he sustained while he was a passenger in a vehicle operated by a patient who had been recently released from a hospital. Prior to the discharge, the patient had taken prescription medication. Shortly after leaving the hospital, the patient consumed alcoholic beverages and then drove the car in which the plaintiff was a passenger into a tree. The plaintiff claimed that the physicians had a duty to warn their patient of the drugs' side effects and that the duty to warn extended to third parties. The supreme court considered decisions from a number of jurisdictions, the social and public policy of Illinois, and its own holdings, and it determined that the preferable view was that "a plaintiff cannot maintain a medical malpractice action absent a direct physician-patient relationship between the doctor and plaintiff or a special relationship, as present in *Renslow*." *Kirk*, 117 Ill. 2d at 531, 513 N.E.2d at 399. In declining to extend a duty to warn to an indeterminate class of potential plaintiffs, the court specifically noted an earlier decision in which it held that in order to establish a duty in a legal malpractice case, a nonclient, third party must plead and prove that the attorney-client relationship was intended to benefit or influence that third party (*Pelham*, 92 Ill. 2d at 21, 440 N.E.2d at 100). *Kirk*, 117 Ill. 2d at 531-32, 513 N.E.2d at 399.

Since *Kirk*, our colleagues in the appellate court have been wary of finding that other types of relationships are of the same intimate nature as that presented in *Renslow*, expressing uncertainty regarding whether the supreme court considered that relationship to be *sui generis*. See, *e.g.*, *Charleston v. Larson*, 297 Ill. App. 3d 540, 548-49, 696 N.E.2d

12

793, 799 (1998); *Britton v. Soltes*, 205 Ill. App. 3d 943, 945-46, 563 N.E.2d 910, 912 (1990); *Heigert v. Riedel*, 206 Ill. App. 3d 556, 563-64, 565 N.E.2d 60, 65 (1990).

While the Illinois Supreme Court has reiterated its holding that the concept of transferred negligence is a limited exception to the customary rule barring malpractice liability to nonpatient third parties, the court has never declared the special relationship between mother and infant in *Renslow* to be *sui generis*. Rather, the court has allowed for the possibility that other intimate relationships would fit within the *Renslow* exception. See *Doe v. McKay*, 183 Ill. 2d 272, 280, 700 N.E.2d 1018, 1023 (1998) (the special relationship between a mother and an infant is "perhaps singular and unique"). Given that, litigants continue to explore in good faith the bounds of the *Renslow* exception and the nature of the relationships that fit within it. In this case, we must consider whether the plaintiffs have alleged the existence of a special relationship shared by Richard and Teresa that will support a claim based on transferred negligence.

In this case, the plaintiffs have alleged that Teresa and her husband shared an intimate, marital relationship and that Teresa was an active participant in his medical care, providing the defendants with information regarding her husband's changeable moods and behaviors and consulting with the defendants regarding her concerns about whether her husband would act on his ideas and threats and do her harm. In our view, the relationship, as alleged, between Teresa and Richard reaches the level of personal, familial intimacy that was present in *Renslow*. The injury inflicted on Teresa was physical and traceable to the allegedly negligent treatment of Richard's mental health conditions. The allegations of the complaint do not indicate that interests of the plaintiffs and Richard Street are adverse to each other. Moreover, finding that the plaintiff has pleaded a cause of action under the facts of this case would not expose therapists to suits by any nonpatient, third party who is adversely affected by a patient. We conclude that the special relationship between husband and wife, under the

13

circumstances of this case, is comparable to that found in *Renslow*, and we believe that the Illinois Supreme Court would concur.

In summary, we conclude that the third amended complaint sets forth sufficient factual allegations to establish a cause of action based on theories of a voluntary undertaking and transferred negligence and that the trial court erred in dismissing the action. We therefore order the action reinstated in its entirety. We caution that this appeal is limited to the legal sufficiency of the complaint for purposes of a motion to dismiss under section 2-615 of the Code of Civil Procedure.

D.  Request for Reimbursement of Expenses Related to the Motion to Compel

In the second point on appeal, the plaintiffs contend that the trial court erred in refusing their request for reimbursement of the attorney fees and costs that they incurred as a result of the failure of Daniel O'Brien, M.D., a respondent in discovery, to answer certain questions posed to him during a discovery deposition. The plaintiffs contend that the deponent lacked substantial justification for his failure or refusal to answer the question and that, pursuant Supreme Court Rule 219(a) (210 Ill. 2d R. 219(a)), the deponent should be required to reimburse the plaintiffs for the reasonable expenses they incurred in obtaining an order compelling his testimony.

Under supreme court rules, the trial court has broad authority to supervise the discovery process. If a party or other deponent refuses to answer any question propounded upon oral examination, the proponent of the question, upon notice to all parties, may move the trial court for an order compelling an answer. 210 Ill. 2d R. 219(a). If the court finds that the deponent failed or refused to answer questions and that the failure or refusal was "without substantial justification", the court is required to order the offending party or deponent to pay to the aggrieved party the amount of the reasonable expenses incurred in obtaining an order compelling compliance with the rules of discovery. *Van Hyning v. Hyk*,

14

78 Ill. App. 3d 721, 724, 397 N.E.2d 566, 568 (1979); *Lynch v. Mullenix*, 48 Ill. App. 3d 963, 363 N.E.2d 645 (1977).

In this case, the trial court reviewed the deposition transcript of Dr. O'Brien and considered the arguments of counsel. The court found that some of the questions posed were proper and should have been answered. But the court did not find that Dr. O'Brien's failure or refusal to answer those questions was without substantial justification. The court extended the period for discovery so that the deposition of Dr. O'Brien could be concluded, but it declined the plaintiffs' requests for court supervision of the deposition and for reimbursement of the fees and expenses they incurred in pursuing the motion to compel. After reviewing the record, we cannot say that the trial court erred in finding that there was substantial justification for the deponent's refusal to answer some of the questions posed to him.

### III. Conclusion

The third amended complaint sets forth sufficient factual allegations to establish a cause of action based on theories of a voluntary undertaking and transferred negligence. The trial court erred in dismissing the third amended complaint with prejudice. In the absence of a finding that the deponent's conduct lacked substantial justification, the decision to deny the plaintiffs' request for the reimbursement of expenses under Supreme Court Rule 219(a) was proper.

Accordingly, the decision to deny the reimbursement of expenses under Supreme Court Rule 219(a) is affirmed, the decision to dismiss the action with prejudice is reversed, and the action is reinstated in its entirety and remanded to the circuit court for further proceedings.

Affirmed in part and reversed in part; cause remanded.

15

CHAPMAN and STEWART, JJ., concur.

NO. 5-06-0065

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| BRENDA TEDRICK, Administrator of the Estate of Teresa Street, Deceased, and BRENDA TEDRICK and JAMES TEDRICK, Guardians of the Estates of Dalton Ryan Street and Dylan Bryce Street, Minors, | ) ) ) ) ) ) | Appeal from the Circuit Court of Marion County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 05-L-36 |
| COMMUNITY RESOURCE CENTER, INC., d/b/a COMMUNITY RESOURCE CENTER, VANDALIA, ILLINOIS; DEENA BALLARD, LCSW; LYNETTE M. GARTKE, LCPC; GEORGIANNE B. BROUGHTON, LCPC; JAMES R. GOGGIN, M.D.; HEALTH MANAGEMENT LIMITED PARTNERSHIP, d/b/a DOCTORS HOSPITAL; VINE STREET CLINIC, LLC; FAREED TABATABAI, M.D., JUDY L. KEEVEN, M.D.; and SALLY PUTNAM, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants-Appellees | ) ) | |
| (Physicians Group Associates, S.C., Daniel O'Brien, M.D., and St. Mary's Hospital, Centralia, Illinois, | ) ) ) ) | Honorable David L. Sauer, |
| Respondents in Discovery-Appellees). | ) | Judge, presiding. |

**Opinion Filed**: May 17, 2007

**Justices**: Honorable James K. Donovan, J.

Honorable Melissa A. Chapman, J., and
Honorable Bruce D. Stewart, J.,
Concur

**Attorneys for Appellants**
Christian G. Montroy, The Rex Carr Firm, LLC, 412 Missouri Ave., East St. Louis, IL 62201; James E. Buchmiller, James E. Buchmiller, Ltd., 102 East Main Street, Greenville, IL 62246

**Attorneys for Appellees**
Matthew J. Maddox, Quinn, Johnston, Henderson & Pretorius, 205 South Fifth Street, Suite 900, Springfield, IL 62701 (attorney for Judy L. Keeven, M.D.)

**Attorneys for Appellees Continued**

Stephen R. Swofford, Hinshaw & Culbertson, 222 N. LaSalle Street, Suite 300, Chicago, IL 60601-1081 (attorney for James R. Goggin, M.D., Fareed Tabatabai, M.D., and Vine Street Clinic, LLC)

Randall W. Segatto, Barber, Segatto, Hoffee & Hines, P.O. Box 79, Springfield, IL 62705-0079 (attorney for Sally Putnam)

Brian J. Hickey, Cassiday, Schade & Gloor, 1230 East Diehl Road, Suite 202, Naperville, IL 60563 (attorney for Deena Ballard, LCSW, Georgianne B. Broughton, LCPC, Community Resource Center, Inc., and Lynette M. Gartke, LCPC)

Daniel R. Price, Wham & Wham, 212 East Broadway, P.O. Box 549, Centralia, IL 62801 (attorney for St. Mary's Hospital, Centralia, IL -- NO BRIEF FILED)

Richard H. Narup, Drake, Narup & Mead, P.C., 107 E. Allen Street, Springfield, IL 62704 (attorney for Daniel O'Brien, M.D., and Physicians Group Associates, S.C.)