Rule 23 order filed
August 5, 2008;
Motion to publish granted
September 18, 2008.

NO. 5-06-0231

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

HOLLYWOOD TRUCKING, INC.,      ) Appeal from the
     ) Circuit Court of
     Plaintiff-Appellant,      ) Saline County.
     )
v.      ) No. 06-L-1
     )
ROGER WATTERS, M.D.,      )
PRIMARY CARE GROUP, and      )
JAMES ATKINSON,      ) Honorable
     ) Bruce D. Stewart,
     Defendants-Appellees.      ) Judge, presiding.
_____

JUSTICE DONOVAN delivered the opinion of the court:

The plaintiff, Hollywood Trucking, Inc. (Hollywood), filed a three-count complaint in the circuit court of Saline County, against the defendants, Roger Watters, M.D., Primary Care Group (Primary Care), and James Atkinson. In the complaint, Hollywood alleged that Dr. Watters negligently certified Atkinson's physical fitness to operate a commercial motor vehicle under regulations established by the United States Department of Transportation (DOT) (count I); that Dr. Watters fraudulently certified that Atkinson was physically fit to operate a commercial motor vehicle under DOT regulations (count II); that James Atkinson fraudulently misrepresented his medical history in that he failed to disclose prior back surgeries during the DOT certification examination (count III); and that if it had been aware of Atkinson's back condition, it would not have hired Atkinson and it would not have become liable to provide benefits to him under the Illinois Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2002)).

All the defendants filed motions to dismiss the counts against them pursuant to section

1

2-619 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2004)). After considering the parties' arguments, the circuit court dismissed with prejudice count I and count III but let count II stand. The court expressly found that there was no just reason to delay the enforcement or appeal of its rulings. Hollywood filed this appeal pursuant to Illinois Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)).

Hollywood is an interstate motor carrier located in Eldorado, Illinois. Its operations are regulated by the DOT. The DOT imposes a number of rules on interstate motor carriers and the persons who drive commercial motor vehicles for those carriers. See 49 C.F.R. §§391.1, 391.11(a) (2005). Each motor carrier is required to investigate and make inquiries with respect to the backgrounds and qualifications of the driver it employs. 49 C.F.R. §391.23 *et seq.* (2005). Each driver is required to periodically submit to road tests (49 C.F.R. §391.31 (2005)) and physical examinations (49 C.F.R. §391.41 (2005)) in order to establish the driver's competence to operate and control a commercial motor vehicle. A driver is also required to present a copy of a medical examiner's certificate stating that the driver is physically qualified to operate and control a commercial motor vehicle safely. 49 C.F.R. §§391.41(a), 391.45 (2005). Section 391.41(b) of Title 49 of the Code of Federal Regulations (49 C.F.R. §391.41(b) (2005)) identifies the physical and medical conditions to be evaluated during the examination. The standardized medical evaluation form includes a section noting the driver's health history and a section detailing the physical examination. Section 391.43 identifies the qualifications of the medical examiners and provides the examiners with instructions for performing the examination and recording the results. 49 C.F.R. §391.43 (2005).

"The medical examiner must be aware of the rigorous physical, mental, and emotional demands placed on the driver of a commercial motor vehicle. *In the interest of public safety*, the medical examiner is required to certify that the driver

2

does not have any physical, mental, or organic condition that might affect the driver's ability to operate a commercial motor vehicle safely." (Emphasis added.) 49 C.F.R. §391.43(f) (2005).

Section 391.47 provides a process for a resolution in the event of a disagreement between the physician for the driver and the physician for the motor carrier regarding the driver's physical fitness to operate a commercial vehicle. 49 C.F.R. §391.47 (2005).

On January 9, 2004, Atkinson presented to Primary Care to undergo a medical examination for purposes of determining his fitness to drive a commercial motor vehicle under 49 C.F.R. §391.41 (2005). According to the "Medical Examination Report for Commercial Driver Fitness Determination" (DOT medical report), Atkinson was seeking a new certification of his physical qualifications to operate a commercial motor vehicle. Dr. Watters, an employee of Primary Care, conducted the physical examination and completed the DOT medical report. Dr. Watters found that Atkinson had no abnormalities or conditions in the body systems listed in the DOT's standardized form. Dr. Watters determined that Atkinson met the physical qualifications to operate a commercial vehicle according to 49 C.F.R. §391.41(b) (2005) and that Atkinson qualified for a two-year certificate.

Sometime after Atkinson was medically certified to operate a commercial motor vehicle, he was hired by Hollywood. On June 22, 2004, Atkinson was securing a tarp over a load of lumber when he fell approximately 10 to 12 feet, from the top of a tractor-trailer to the ground, and injured his back.

On July 26, 2004, Atkinson filed a workers' compensation claim. After the claim was filed, Hollywood disclosed that it had not obtained workers' compensation insurance and that it would be personally liable for any award of medical expenses, temporary total disability benefits, and permanent disability benefits that were found to be attributable to the incident on June 22, 2004. Hollywood paid a portion of Atkinson's medical bills and temporary total

3

disability benefits but then denied liability and ceased further payments. In defending its decision to stop paying benefits, Hollywood initially claimed that Atkinson had sustained his injuries at home and that his injuries did not arise out of and in the course of his employment. Several months later, Hollywood asserted that Atkinson was not eligible for benefits because he had made false representations regarding his medical history in the DOT fitness report.

On January 9, 2006, Hollywood filed a three-count complaint against Dr. Watters, Primary Care, and Atkinson in the circuit court of Saline County.[1] Hollywood brought count I against Dr. Watters and Primary Care. Hollywood alleged that Dr. Watters performed a DOT examination on Atkinson on January 9, 2004; that Dr. Watters and Primary Care owed "Hollywood Trucking, Inc.[,] and other employers who might hire Atkinson as a truck driver and the general motoring public a duty to examine Atkinson and to report his physical condition using that degree of skill and care normally employed by those with like training, education[,] and experience"; and that Dr. Watters violated his duty of care and was negligent in that (a) he failed to recognize and report that Atkinson had obvious surgical scars on his back, (b) he failed to recognize and report that Atkinson had lied when he reported that he never had a spinal injury, spinal disease, or chronic lower back pain, (c) he reported that Atkinson had no previous surgery to his back or spine, no deformities to his back or spine, no limitation of motion to his back or spine, and no tenderness to his back or spine, when, had he examined Atkinson's back, he could have seen the surgical scars, and (d) he reported that Atkinson met the standards of 49 C.F.R. §391.41 (2005), when he did not meet those standards. Hollywood further alleged that as a proximate cause of one or more of the negligent omissions, it hired Atkinson and thereafter became liable to defend against Atkinson's workers' compensation claim and to pay benefits for injuries and disabilities that

---

[1] Atkinson's workers' compensation claim was pending when Hollywood filed its complaint. Atkinson's claim was unresolved as of the date of oral arguments on appeal.

4

are causally connected to the June 22, 2004, incident.

Hollywood brought count II against Dr. Watters and alleged fraudulent misrepresentation in regard to the performance of the DOT medical examination and the certification of the driver. Count II is not at issue in this appeal.[2]

Hollywood brought count III against its employee. Hollywood alleged that Atkinson fraudulently misrepresented his medical condition in that he indicated that he had no prior history of spinal injury, disease, or lower back pain in the patient history section of the DOT medical report when he knew that he had undergone back surgery and had experienced a prior limitation of motion, chronic low back pain, and tenderness in his spine. Hollywood reasserted the elements of damages set forth in count I, and it made a claim for punitive damages.

The defendants moved to dismiss the counts filed against them pursuant to section 2-619 of the Code. The circuit court determined that under the circumstances alleged in count I, a physician owes no duty to a prospective employer, such as Hollywood, to exercise ordinary care in physically examining an individual to determine whether he or she is physically qualified to drive a commercial motor vehicle pursuant to DOT regulations set forth in 49 C.F.R. §391.41 *et seq.* (2005). The court dismissed count I with prejudice. The court also determined that the Illinois Workers' Compensation Commission had exclusive jurisdiction over the matters described in count III, and it dismissed count III with prejudice. This appeal followed.

A motion for an involuntary dismissal filed pursuant to section 2-619 raises certain defects or defenses to the action. 735 ILCS 5/2-619 (West 2004). In considering a trial court's decision to grant a motion for an involuntary dismissal, a reviewing court must accept

---

[2]The circuit court denied Dr. Watters' motion to dismiss count II, but it stayed the action pending the disposition of this appeal.

5

all well-pleaded facts as true and view them in a light most favorable to the plaintiff. *Bartow v. Ford Motor Co.*, 342 Ill. App. 3d 480, 483, 794 N.E.2d 1027, 1029 (2003). The standard of review is *de novo*. *Bartow*, 342 Ill. App. 3d at 483, 794 N.E.2d at 1030.

The first issue is whether the circuit court erred in dismissing count I on the ground that Dr. Watters and Primary Care had no duty to prospective employers, such as Hollywood, to exercise ordinary care in performing a DOT medical examination pursuant to 49 C.F.R §391.41 (2005). In order to state a legally sufficient cause of action for negligence, the complaint must set out facts that establish the existence of a duty owed by the defendant to the plaintiff, a breach of the duty, and an injury proximately caused by the breach. *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 525, 513 N.E.2d 387, 395-96 (1987). The existence of a duty is a question of law to be determined by the court. *Kirk*, 117 Ill. 2d at 525, 513 N.E.2d at 396. The court must determine whether the defendant and the plaintiff stood in such a relationship to each other that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of a plaintiff. *Kirk*, 117 Ill. 2d at 525, 513 N.E.2d at 396. The Illinois Supreme Court has instructed that the existence and the scope of a legal duty should not rest only on the foreseeability of the occurrence. *Cunis v. Brennan*, 56 Ill. 2d 372, 375, 308 N.E.2d 617, 618-19 (1974). A court should consider the reasonable foreseeability of the injury, the likelihood of injury, the burden of guarding against the injury, and the consequences of placing that burden upon the defendant. *Kirk*, 117 Ill. 2d at 526, 513 N.E.2d at 396.

The nature of the relationship between the parties is a threshold question in the duty analysis. In this case, Hollywood has neither alleged nor argued that there is a direct relationship between itself and Dr. Watters and Primary Care. Hollywood has not asserted that Dr. Watters and Primary Care performed Atkinson's DOT fitness examination at its request. Hollywood has not asserted that it directs its drivers and prospective hires to obtain

6

their DOT fitness examinations at Primary Care or that it pays for examinations performed at Primary Care. Hollywood acknowledges that Atkinson was not one of its employees at the time he presented to Primary Care for his DOT fitness examination. The absence of a special, intimate relationship between Atkinson and Hollywood eliminates from consideration a duty owed by Dr. Watters and Primary Care to Hollywood under the transferred-negligence theory discussed in *Renslow v. Mennonite Hospital*, 67 Ill. 2d 348, 367 N.E.2d 1250 (1977), and *Tedrick v. Community Resource Center, Inc.*, 373 Ill. App. 3d 761, 869 N.E.2d 421 (2007), *appeal allowed*, 225 Ill. 2d 677, 875 N.E.2d 1125 (2007). Likewise, the absence of a special relationship between Atkinson and Dr. Watters eliminates from consideration any of the recognized exceptions to the general rule that a person has no duty to control the conduct of a third party to prevent him from causing harm to another. See Restatement (Second) of Torts §§315 through 319 (1965); *Estate of Johnson v. Condell Memorial Hospital*, 119 Ill. 2d 496, 509-10, 520 N.E.2d 37, 42-43 (1988).

Hollywood's difficulties in defining the duties of Dr. Watters and Primary Care are revealed in its pleadings in the circuit court and its written and oral arguments before this court. Within the period between the filing of the complaint in the circuit court and the filing of the briefs in this court, the theory alleged in count I was gradually transformed from a general negligence theory to a more specific theory of negligent misrepresentation. Nevertheless, the nature and scope of Dr. Watters' duty remains unclear.

Hollywood suggests that Dr. Watters should be held liable for negligently misrepresenting the results of the DOT fitness examination because he is an approved evaluator who undertook to examine Atkinson and record the results of the examination for the specific purpose of directly benefiting prospective employers. Hollywood contends that it was an intended beneficiary of the relationship between Dr. Watters and Atkinson. We disagree. The circumstances of this case do not fit within the parameters of cases where a

7

professional has been hired by a client to render services for the specific purpose of conferring a benefit on a third party.  See, *e.g.*, *Pelham v. Griesheimer*, 92 Ill. 2d 13, 20-21, 440 N.E.2d 96, 99-100 (1982); *Stinson v. Physicians Immediate Care, Ltd.*, 269 Ill. App. 3d 659, 646 N.E.2d 930 (1995).

In this case, Atkinson went to Dr. Watters for the primary purpose of obtaining a DOT medical certificate so that he could drive commercial motor vehicles.  Atkinson was a direct beneficiary of the examination.  The DOT regulations governing the medical examination of drivers specifically provide that the examiner's duty is to evaluate the driver's present physical condition for purposes of determining whether he has any infirmity that is likely to interfere with his ability to operate and control a commercial vehicle safely, and they also provide that the examination and certification of physical fitness are required in the interest of public safety.  49 C.F.R. §§391.41, 391.43(f) (2005).  It is clear that the DOT medical examination was implemented for the safety of the traveling public,[3] and not for purposes of insulating an employer from every claim of injury an employee sustains in the course of his employment.  Count I fails to allege factual allegations to establish that Hollywood was an intended beneficiary of the professional services that Dr. Watters provided to Atkinson.

Hollywood also suggests that in conducting the DOT medical examination, Dr. Watters assumed a duty to provide information to employers of physically unsafe drivers "whose hiring may cause financial loss to the employer and physical injury and damage to drivers and others" on the highway.  It contends that Dr. Watters should be held liable for negligently misrepresenting the results of the DOT medical examination because he knew that prospective employers would be guided by the results in making hiring decisions.

---

[3]Perhaps under other circumstances, one could make a compelling argument that those traveling on public highways are direct and intended beneficiaries of the DOT medical examination, but that issue is not before us.

8

Negligent misrepresentation involves the breach of a duty to use reasonable care in obtaining and communicating information upon which others may reasonably be expected to rely in the conduct of their business transactions. Restatement (Second) of Torts §552 (1977); *Cahill v. Eastern Benefit Systems, Inc.*, 236 Ill. App. 3d 517, 603 N.E.2d 788 (1992). Section 552(3) of the Restatement (Second) of Torts states that the liability of one who is under a public duty to give information extends to the loss suffered by a person or a limited group of persons for whose benefit and guidance the information is intended, in any of the transactions in which it is intended to protect them. Restatement (Second) of Torts §552(3) (1977); *Cahill*, 236 Ill. App. 3d 517, 603 N.E.2d 788.

In this case, Dr. Watters conducted a DOT medical examination on Atkinson for the purpose of determining whether he had any condition or infirmity that would likely interfere with his ability to operate and control a commercial motor vehicle on the public highways. The DOT medical examination was not performed for the purpose of certifying that he would not reinjure or aggravate his back while performing his work-related duties, and the result of the examination was not expected or intended to be used to assess the likelihood that Atkinson would suffer an on-the-job injury and to calculate the potential exposure to a prospective employer under the Workers' Compensation Act if it hired Atkinson. Additionally, we note that the complaint does not allege that Hollywood actually relied upon the results of Dr. Watters' examination or that it would be required to accept the opinion of a prospective employee's physician under the federal regulations (49 C.F.R. §391.47 (2005)).

Having liberally construed the factual allegations in count I and the theories of liability and duty developed in the appellate arguments, we conclude that Hollywood has not alleged facts to establish that Dr. Watters and Primary Care owed it a duty of care under the circumstances of this case. The circuit court did not err in dismissing count I with prejudice.

We next consider whether the circuit court erred in dismissing count III on the basis

9

of a lack of jurisdiction. The court found the Illinois Workers' Compensation Commission (Commission) has exclusive jurisdiction over the matters described in count III, and therefore, it dismissed with prejudice Hollywood's fraud count against Atkinson. Hollywood contends that the court's ruling ignores the fact that the fraud allegations in count III are based upon events which predate Atkinson's employment with Hollywood and his alleged on-the-job injury. Hollywood insists the pending action was filed for the purpose of obtaining a remedy for the harm that resulted from Atkinson's fraudulent misrepresentations prior to his employment and not for purposes of litigating the merits of Atkinson's workers' compensation case. Hollywood contends that there are no provisions within the Workers' Compensation Act which indicate that the Commission is expected to authorize or to adjudicate matters concerning restitution or the repayment of workers' compensation benefits and that the action can only be brought in the circuit court as a common law action for fraud. We disagree.

Section 18 of the Illinois Workers' Compensation Act (Act) (820 ILCS 305/18 (West 2002)) specifically states, "All questions arising under this Act, if not settled by agreement of the parties interested therein, shall, except as otherwise provided, be determined by the Commission." The Illinois Supreme Court has determined that the circuit courts have no original jurisdiction in cases involving a determination of workers' compensation benefits. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 158, 601 N.E.2d 720, 727 (1992). However, the Illinois Supreme Court has held that there are certain instances in which the Commission and the circuit court have concurrent jurisdiction to decide a question raised in a workers' compensation case. For example, in *Employers Mutual Cos. v. Skilling*, 163 Ill. 2d 284, 644 N.E.2d 1163 (1994), the Illinois Supreme Court determined that the Commission and the circuit court had concurrent jurisdiction to consider an insurance issue regarding the scope of coverage afforded under a workers' compensation policy. *Skilling*, 163 Ill. 2d at 286-87,

10

644 N.E.2d at 1165.

According to the factual allegations set forth in count III of the complaint, Hollywood is seeking to recoup the benefits it has paid to Atkinson under the Act, on the theory that Atkinson fraudulently misrepresented his physical condition at the time of his hiring. The allegations in count III involve factual issues regarding accident, causal connection, the nature and extent of the injury, and the employer's potential defenses, and these are proper subjects for the Commission in the first instance. In cases involving a determination of an employee's entitlement to workers' compensation benefits and the employer's defenses to the claim, the circuit court's role is appellate only. *Gunnels v. Industrial Comm'n*, 30 Ill. 2d 181, 185, 195 N.E.2d 609, 611 (1964). Accordingly, we find that the circuit court did not err in dismissing count III for a lack of jurisdiction.

Accordingly, the circuit court's decision to dismiss count I and count III of the complaint with prejudice is affirmed, and the cause is remanded for further proceedings.

Affirmed; cause remanded.

SPOMER, J., concurs.

JUSTICE GOLDENHERSH, concurring in part and dissenting in part:

I concur with the majority's disposition with regard to count III. As to count I, however, I respectfully dissent.

In general, a physician does not owe a duty to a nonpatient third party in regard to his or her treatment of a patient. *Brewster v. Rush-Presbyterian-St. Luke's Medical Center*, 361 Ill. App. 3d 32, 36, 836 N.E.2d 635, 638 (2005). However, the instant case does not present a physician-patient relationship. Dr. Watters and Primary Care were not acting as treating

11

physicians but, rather, were certifying that Atkinson was physically qualified to drive a commercial motor vehicle. Section 391.11 of Title 49 of the Code of Federal Regulations sets forth the general qualifications of drivers as follows:

"(a) A person shall not drive a commercial motor vehicle unless he/she is qualified to drive a commercial motor vehicle. Except as provided in §391.63, a motor carrier shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle.

(b) Except as provided in subpart G of this part, a person is qualified to drive a motor vehicle if he/she–

* * *

(4) Is physically qualified to drive a commercial motor vehicle in accordance with subpart E–Physical Qualifications and Examinations of this part[.]" 49 C.F.R. §391.11(a), (b)(4) (2005).

In order for a certificate of physical examination to be issued, a medical examiner is required to examine a prospective driver and record the results in accordance with several instructions, including in pertinent part the following: "*Spine, musculoskeletal.* Previous surgery, deformities, limitation of motion, and tenderness should be noted. Findings may indicate additional testing and evaluation should be conducted." 49 C.F.R. §391.43(f) (2005).

This was a preemployment examination with the intended recipient consumer being a prospective employer, such as plaintiff. In the instant case, Dr. Watters' examination report specifically noted that Atkinson had no previous spinal injury or disease, no chronic low back pain, and no previous surgery, deformities, limitation of motion, or tenderness in his spine or other musculoskeletal areas. According to the pleadings, which we are required to accept as true at this stage in the proceedings, Atkinson has "obvious scars" on his back from his previous back surgeries. Accordingly, Dr. Watters, upon examination, would have

12

discovered that Atkinson misrepresented his history about no previous spinal injuries and no chronic low back pain. Plaintiff alleges that Dr. Watters is a partner, employee, and agent of Primary Care, thereby premising liability on a *respondeat superior* basis.

After careful consideration, I believe that the alleged injury was reasonably foreseeable. Dr. Watters was aware that the examination he was performing on Atkinson was to certify him as medically fit to operate a commercial motor vehicle. Dr. Watters knew that if he certified Atkinson as medically fit to perform the job, potential employers would rely on that certification. Conversely, Dr. Watters was aware that if he refused to certify Atkinson as medically fit, potential employers would refuse to employ Atkinson on that basis.

In *Renslow v. Mennonite Hospital*, 67 Ill. 2d 348, 367 N.E.2d 1250 (1977), the Illinois Supreme Court allowed a nonpatient third party with no patient-hospital or patient-doctor relationship to maintain a cause of action against a hospital and doctor. In *Renslow*, a child not yet conceived at the time negligent acts were committed against its mother by a doctor and hospital employees was allowed to sue for that negligence directed against its mother. A wrong against one person may invade the protected rights of one who has a special relationship with the first party because the law recognizes a limited area of transferred negligence. *Renslow*, 67 Ill. 2d at 357, 367 N.E.2d at 1255.

This is not a situation in which the plaintiff is an unidentifiable third party. Dr. Watters was aware of the nature of this examination and knew that a potential employer would rely on the results of the examination in making a decision with regard to hiring or not hiring Atkinson. I, therefore, find the relationship between Dr. Watters, Primary Care, and plaintiff to be the type of relationship in which it is reasonable to impose a duty. The injury to plaintiff in hiring a prospective employee with undisclosed previous back problems is clear. If plaintiff had been made aware of Atkinson's previous back problems, it might not

13

have hired him and might not have become liable to Atkinson under the Act.

I disagree with Dr. Watters' and Primary Care's assertion that by finding they owed a duty to plaintiff, they would be required to guard plaintiff from every conceivable injury that Atkinson could incur during the course of his employment. However, hiring a driver with previous back problems increases the likelihood of another back injury to that driver. The medical examination was intended to disclose any previous back injuries, deformities, surgeries, or pain. This burden is not onerous. It requires a doctor to exercise due care when performing an examination on a prospective commercial truck driver.

After considering the circumstances here in which Atkinson allegedly injured his back while working for plaintiff, I would find that Dr. Watters and Primary Care owed a duty to plaintiff to exercise due care when performing the physical examination on Atkinson. Accordingly, I would find the trial court erred in granting the motion to dismiss count I on the basis that Dr. Watters and Primary Care owed no duty to plaintiff in regard to Atkinson's medical examination.

14

NO. 5-06-0231

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

<table>
<tr><td>HOLLYWOOD TRUCKING, INC.,</td><td>) Appeal from the<br>) Circuit Court of</td></tr>
<tr><td>    Plaintiff-Appellant,</td><td>) Saline County.<br>)</td></tr>
<tr><td>v.</td><td>) No. 06-L-1<br>)</td></tr>
<tr><td>ROGER WATTERS, M.D.,<br>PRIMARY CARE GROUP, and<br>JAMES ATKINSON,</td><td>)<br>)<br>) Honorable<br>) Bruce D. Stewart,</td></tr>
<tr><td>    Defendants-Appellees.</td><td>) Judge, presiding.</td></tr>
</table>

**Rule 23 Order Filed:**      August 5, 2008
**Motion to Publish Granted:**      September 18, 2008
**Opinion Filed**:      September 18, 2008

**Justices**:      Honorable James K. Donovan, J.

Honorable Stephen L. Spomer, J.,
Concurring
Honorable Richard P. Goldenhersh, J.,
Concurring in part and dissenting in part

**Attorney for Appellant**      George R. Ripplinger, Ripplinger & Zimmer, LLC, 2215 West Main Street, Belleville, IL 62226-6692

**Attorneys for Appellees**      Ronald E. Osman, Ronald E. Osman & Associates, Ltd., 1602 W. Kimmel, P.O. Box 939, Marion, IL 62959 (for Roger Watters, M.D. & Primary Care Group); Jay Schafer, Winters, Brewster, Crosby and Schafer, LLC, 111 West Main, P.O. Box 700, Marion, IL 62959 (for James Atkinson)