**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DONALD R. SHULER**
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JESSE R. DRUM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CORDAY C.DIXON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1311-CR-00448 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable George W. Biddlecome, Judge
Cause No. 20D03-1009-FA-00032

**June 4, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Corday C. Dixon appeals his conviction and sentence for three counts of Child Molesting,[1] two as class C felonies and one as a class A felony. Dixon presents the following restated issues for review:

1.      Was the evidence sufficient to support the convictions?

2.      Is Dixon's sentence inappropriate?

We affirm.

The facts favorable to the convictions are that in May 2010, twelve-year-old L.M. lived in a two-bedroom apartment in Elkhart with her mother, her sister Sarah, Sarah's fiancé, and Sarah's two children. Sarah, her fiancé and her two children slept in one bedroom, while L.M. and her mother shared the other. Either L.M. or her mother, however, would usually sleep in the living room because their bedroom was messy. Dixon, Sarah's fiancé's cousin, was invited to stay at the apartment for one week that May. He was twenty-four years old at the time. While there, he slept in the living room. One day, at approximately 4 o'clock in the morning, L.M. woke up on the couch and observed Dixon sleeping in the living room chair. Thinking he looked uncomfortable, L.M. offered to let him sleep on the couch. He accepted the offer, and L.M. moved to the chair. A moment later, Dixon asked L.M. if she wanted to lie on the couch with him, and she accepted. He asked her if she ever had sex before and she said that she had not. He replied, "we're all good here." *Transcript* at 127.

---

[1]  Ind. Code Ann. § 35-42-4-3 (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014).

2

L.M. was wearing shorts and underwear at the time. Dixon put his hand underneath her shorts and underwear, put his finger in her vagina, and began moving it in a circular motion. The experience was "[v]ery painful" for L.M. *Id.* at 124. Dixon left the room for five minutes and then returned. After returning, he began to touch L.M. again. This time, he pulled down her shirt and bra "and started licking and kissing" her chest. *Id.* at 126. After doing that for several moments, Dixon again stood up and left the room. He returned five to ten minutes later, sat down on the couch, and placed L.M.'s legs across his lap. Then, he pressed L.M.'s hand against his erect penis on the outside of his pants and squeezed her hand.

At approximately 5:00 a.m., they heard L.M.'s mother approaching the door. Dixon pushed L.M.'s legs off of his lap and moved to the chair. When L.M.'s mother entered the room, L.M. did not tell her what had happened. Later that morning at school, L.M. told two friends what Dixon had done. They told her that she should tell Sarah. When she went home from school, L.M. told Sarah that Dixon had touched her and that she wanted him to leave immediately. Nothing was done that day, however, and Dixon once again spent the night at Sarah's house. L.M. slept in her locked bedroom that night. When Dixon was still at Sarah's house the next day, L.M. became alarmed and once again asked her sister to make Dixon leave. Shortly thereafter, L.M.'s father visited Sarah's house and L.M. told him what had happened. When L.M.'s mother arrived home, L.M. told her what had happened with Dixon. At that point police were called.

As a result of the foregoing events, the State charged Dixon with three counts of child molesting, one as a class a felony, and two as class C felonies. Following a two-day jury trial, Dixon was found guilty as charged. The trial court sentenced Dixon to forty years imprisonment.

1.

Dixon contends the evidence was not sufficient to prove that he committed the three acts of child molesting. According to Dixon, "the sole evidence against [Dixon] is the uncorroborated testimony of the alleged victim." *Appellant's Brief* at 8. Our standard of reviewing challenges to the sufficiency of the evidence supporting a criminal conviction is well settled.

> When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. The evidence—even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. "[W]e affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Davis v. State,* 813 N.E.2d 1176, 1178 (Ind. 2004). A conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim.

*Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012) (some citations omitted). These principles apply with equal force in cases involving a conviction for child molesting. *See Bowles v. State*, 737 N.E.2d 1150 (Ind. 2000).

We note initially that Dixon's entire argument on this issue is based upon a faulty premise: "the uncorroborated testimony of a single witness, without any other witness or evidence of this particular event, does not constitute evidence of sufficient probative value of

4

[sic] sustain his convictions." *Appellant's Brief* at 11.  This premise flies in the face of a long line of Indiana cases that have held precisely the opposite, as reflected in the foregoing authority.  In point of fact, we will reverse for insufficient evidence upon the particular claim that Dixon advances here only when we conclude that the "incredible dubiosity" rule applies.  Pursuant to this rule, "we will reverse a conviction if the sole witness presents inherently improbable testimony and there is no circumstantial evidence of the defendant's guilt." *Young v. State*, 973 N.E.2d 1225, 1226 (Ind. Ct. App. 2012), *trans. denied*.  It seems that Dixon seeks to invoke the rule here.  It does not apply.

In support of his argument, Dixon points out what he perceives to be contradictions and inconsistencies in and between the testimonies of the various witnesses called by the State.  We have considered these purported inconsistencies and contradictions, both individually and in the aggregate.  We will not discuss Dixon's claims individually, but will observe only that neither individually nor in the aggregate do they seriously undermine the jury's verdicts.  L.M.'s account of what occurred is entirely plausible and the "inconsistencies," such as they were, were comparatively minor.  L.M. did not waver in her account of what Dixon did to her.  Her testimony was sufficient to support the convictions.

2.

Dixon contends his sentence is inappropriate in light of his character and the nature of his offense.  Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences.  Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d

5

1219 (Ind. 2008). Per Indiana Appellate Rule 7(B), we may revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Wilkes v. State*, 917 N.E.2d 675, 693 (Ind. 2009), *cert. denied*, 131 S.Ct. 414 (2010). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d at 1223. Dixon bears the burden on appeal of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073 (Ind. 2006).

The determination of whether we regard a sentence as appropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State,* 895 N.E.2d at 1224. Moreover, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Id.* at 1225. Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State,* 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original).

In order to assess the appropriateness of a sentence, we first look to the statutory ranges established for the classification of the relevant offenses. Dixon was convicted of one class A felony and two class C felonies, all for child molesting. The advisory sentence for a

6

class A felony is thirty years, with a minimum of twenty years and a maximum of fifty years. The advisory sentence for a class C felony is four years, with a minimum of two years and a maximum of eight years. Dixon received an executed sentence totaling forty years, consisting of a forty-year sentence for the class A felony, and concurrent six-year sentences for each of the class C felonies.

Dixon cultivated a relationship with L.M. by paying attention to her and expressing an interest in her life. L.M. testified that one of the things that stood out to her was that he would ask her how her day was at school or ask whether she was having problems. According to L.M., she "never really got that kind of attention from anyone in the house." *Transcript* at 160. Shortly thereafter, Dixon perpetrated three separate acts of molestation on L.M., one of which was "very painful" for her. In doing so, he took advantage of the unstable living condition in which L.M. found herself.

Turning now to Dixon's character, this court has noted that a trial court may consider a defendant's criminal history in assessing the defendant's character. *See, e.g.*, *Childress v. State*, 848 N.E.2d 1073. The significance of a defendant's criminal history in assessing his character is based on the gravity, nature, and number of prior offenses relative to the current offense. *Boling v. State*, 982 N.E.2d 1055 (Ind. Ct. App. 2013). Even a minor criminal history is nonetheless a poor reflection on the defendant's character. *See id*. The trial court noted that he had one prior felony conviction for strangulation, and that he failed to appear in that case and subsequently violated his probation. The court also noted at least one prior

7

misdemeanor marijuana conviction,[2] and that he failed to appear in that case. At the time Dixon committed the present offenses, he was on probation for an unrelated offense and yet other charges were pending against him.

Dixon bore the burden of convincing us that his sentence is inappropriate. Upon consideration of the nature of his offenses and, in particular, his character, we cannot say that the forty-year sentence imposed by the trial court is inappropriate.

Judgment affirmed.

MATHIAS, J., and PYLE, J., concur.

---

[2] At sentencing, the court identified only one prior misdemeanor conviction, which must necessarily have referred to a marijuana conviction. The pre-sentence investigation report, however, reflects that two separate cases alleging use of marijuana were filed against Dixon in Michigan, both of which were adjudicated and both of which resulted in fines and fees assessed against Dixon. Only one of those resulted in a jail term, albeit suspended.